686 A.2d 386

KAREN METAKES PARISI, PLAINTIFF–RESPONDENT, v. AETNA CASUALTY AND SURETY COMPANY, AS SERVICING CARRIER FOR THE NEW JERSEY FULL INSURANCE UNDERWRITERS ASSOCIATION; AND AETNA CASUALTY AND SURETY COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1996—Decided January 6, 1997.

180

Before Judges PRESSLER, STERN and WECKER, JJ.

*John V. Petrycki, Jr.* argued the cause for appellant (*Fitzpatrick, Reilly, Supple & Gaul*, attorneys; *John V. Petrycki, Jr.*, on the brief).

*Theodore F. Kerin* argued the cause for respondent (*Sullivan & Liapakis*, attorneys; *Mr. Kerin*, on the letter brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Defendant Aetna Casualty and Surety Company appeals from a summary judgment adjudicating its liability, by way of declaratory judgment, to pay personal injury protection (PIP) benefits to plaintiff Karen Metakes Parisi. We conclude that the trial judge was correct in rejecting Aetna's statute of limitations defense, and, accordingly, we affirm.

The novel issue before us requires us to determine when the cause of action accrues against a PIP carrier that is not primarily liable. Analogizing to excess insurance, we are satisfied that the cause does not accrue until the injured person entitled to benefits knows or is chargeable with knowing that the primary coverage will be inadequate. *N.J.S.A.* 39:6A–13.1 requires the action for PIP benefits to be brought within two years, extendable to four in specified circumstances, "after the injured person ... suffers a loss or incurs an expense...." In our view, if the injured person is required to exhaust primary coverage before recourse to "excess" coverage, the loss *vis-a-vis* the excess coverage has not been suffered until the exhaustion occurs.

The facts giving rise to this controversy are not in dispute. In September 1989, plaintiff, a pedestrian, was struck by a vehicle registered in New Jersey owned by Chimanbha G. Patel, driven by his wife, Rashmika Nancy Patel, and insured by defendant Aetna. Plaintiff, not a New Jersey resident, had an automobile policy issued to her in New York by The Travelers whose total combined no-fault benefits were statutorily limited to $50,000. *N.Y. Ins. Law* § 5102(a) (McKinney 1996).[1] Plaintiff's medical and hospital bills were submitted to The Travelers, which had assumed its PIP responsibilities from the outset. It appears from the certifications filed in the trial court that plaintiff's injuries included shoulder and knee injuries as well as a variety of soft-tissue injuries. Her initial treatment was conservative in an attempt to avoid surgery, and in the first several years following the accident, her total medical bills amounted to about $20,000. As time went on, however, more aggressive intervention became necessary, and plaintiff underwent lateral release surgery to repair her knee injury and, in 1994, complex reconstructive surgery of her left shoulder, an eventuality that had not been foreseen early on.

It appears that when the shoulder surgery was scheduled, plaintiff was concerned about the adequacy of her remaining Travelers' benefits. In early January 1994, she determined that about $35,000 had already been spent for her care. At that time, her attorney wrote to Aetna, advising it that there were probably insufficient benefits left on the Travelers' policy to cover plaintiff's future expenses. Pointing out that "Aetna would already have a substantial file in this matter concerning the liability claim against your driver, and that file should contain the medical reports," plaintiff's attorney demanded that Aetna prepare to pay medical expenses in excess of $50,000 should that amount be reached and that it "set up a 'no-fault' file in this matter for future bills." On February 24, 1994, Aetna responded to counsel by form letter,

---

[1] It appears that plaintiff had not opted for the maximum $25,000 supplemental benefits at additional premium provided for by *N.Y. Ins. Law* § 5102(a)(5).

disclaiming coverage on the ground of the statute of limitations, *N.J.S.A.* 39:6A–13.1; the anti-stacking provision of the statute, *N.J.S.A.* 39:6A–4.2; and, because plaintiff was a pedestrian, the inapplicability of the so-called "deemer" statute, *N.J.S.A.* 17:28–1.4. This action was commenced in April 1994.

Defendant moved for summary judgment dismissing the complaint. Abandoning its anti-stacking and deemer arguments, it relied exclusively on *N.J.S.A.* 39:6A–13.1. The trial judge, concluding that the suit was not thereunder barred, granted plaintiff's cross-motion for summary judgment, adjudicating Aetna's liability for PIP payments in excess of $50,000. Aetna appeals.

■ At the outset, we assume that Aetna's abandonment of its anti-stacking argument was based on Judge King's analysis in *Martin v. Prudential Ins. Co.*, 255 *N.J.Super.* 524, 605 *A.2d* 762 (App.Div.1992), of the import of *N.J.S.A.* 39:6A–4.2. That provision, enacted in 1983, has a two-pronged significance. First, it renders the named insured's personal injury protection the primary coverage as well as the primary coverage of resident relatives of the insured's household not having their own insurance. Second, it has an anti-stacking provision preventing recovery of PIP benefits under more than one automobile policy for injuries sustained in a single accident. *Martin* construed the anti-stacking provision in the context of a Pennsylvania resident who had her own Pennsylvania family automobile policy and who was injured in New Jersey while a passenger in a New Jersey-registered automobile. The Pennsylvania policy afforded medical benefits of $10,000. Martin obtained and exhausted those benefits under that policy. She then sought PIP benefits from her host driver's New Jersey policy issued by Prudential Insurance Company. Prudential argued that by having accepted the medical pay limits on her own policy, Martin was precluded by *N.J.S.A.* 39:6A–4.2 from recourse against its policy. In rejecting that argument, this court held that the anti-stacking provision, intended to prevent double recovery, did not apply. Judge King reasoned as follows:

> While the language of *N.J.S.A.* 39:6A–4.2 may arguably support more than one interpretation, including that advanced here by Prudential, we conclude that the construction urged by appellant Martin is the correct one.

> . . . .

> Discerning the will of the legislature in this case is neither difficult nor a matter of first impression. Our courts have consistently held that the language under consideration here—"[n]o person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident"—is a prohibition against double PIP recovery.

> . . . .

> This case does not involve a double recovery. Prudential urges that Allstate's $10,000 payment under Martin's Pennsylvania-issued policy cut off any obligation it had to pay PIP benefits for her injuries. This interpretation requires us to conclude that the Legislature had some additional interest in placing a limitation on the source of PIP medical benefits, apart from its obvious interest in avoiding a double recovery. We find neither authority for this view nor reason behind it. The PIP statute provided for medical benefits coverage (unlimited in 1989) to "persons sustaining bodily injury while occupying" the automobile of the named insured. *N.J.S.A.* 39:6A–4. No attempt was made to limit the rights of nonresident guest passengers in New Jersey-insured vehicles who might have modest medical expense benefits under their own family policies in our sister states under diverse or disparate statutory schemes. We conclude that the Legislature did not intend by *N.J.S.A.* 39:6A–4.2 to preclude a seriously injured victim from recovering the statutorily-mandated benefits from an otherwise primarily liable insurer merely because of an inconsequential medical benefits payment, such as Allstate made in this case. [Citations omitted.]

> [255 *N.J.Super.* at 526–528, 605 *A.*2d 762].

We fully endorse that reasoning and conclude that it applies here. *See also Martin v. Home Ins. Co.*, 141 *N.J.* 279, 661 *A.*2d 808 (1995). We see little difference between an out-of-state medical pay coverage with a $10,000 maximum and an out-of-state no-fault coverage affording $50,000 maximum coverage for all economic losses attributable to the accident. In our view, the New York no-fault policy here, like the Pennsylvania policy in *Martin,* fits the category of "modest medical expense benefits under ... family policies [issued] in sister states under diverse or disparate statutory schemes." *Id.* at 527, 605 *A.*2d 762. And such policies do not come within the anti-stacking bar.

In further support of the applicability of Judge King's reasoning here, we point out that in *Martin v. Home Ins. Co., supra,* 141 *N.J.* at 281–282, 661 *A.*2d 808, the Supreme Court emphasized the legislative policy, expressed in part through the so-called deemer statute, that persons injured in automobile accidents in this State, whether or not resident here, should be entitled to the full economic protection afforded by New Jersey's generous no-fault benefits. We think it clear that this policy is advanced by permitting a non-resident injured in New Jersey to have recourse to available New Jersey PIP coverage after exhausting the modest benefits available under her home state laws. In any event, we need not further address this issue in view of Aetna's decision to abandon the anti-stacking defense.

With respect to the statute of limitations defense, *N.J.S.A.* 39:6A–13.1a provides as follows:

> Every action for the payment of benefits set forth in sections 4 and 10 of this act, except an action by a decedent's estate, shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.

We recognize that the statute imposes a four-year bar, measured from the date of the accident, on the bringing of a PIP action and that this action was not commenced until more than four and a half years had elapsed.[2] We agree, however, with the trial judge that in the special circumstances here, the bar does not apply. That is so because in the ordinary case, the cause of action against the PIP carrier accrues when the accident occurs. The primary carrier is immediately responsible for the medical expenses. Here, however, there was a different primary carrier on an out-of-state policy against whose coverage plaintiff was first

---

[2] Clearly, if the action had been brought within the four-year "cap," it would not have been barred by the two-year limitation if the primary benefits had not by then been exhausted.

obliged to seek recourse. Her right to benefits under the Aetna policy did not, therefore, accrue until her primary coverage was exhausted or, at the earliest, until she knew or was reasonably chargeable with knowledge that they would be exhausted. *See, e.g., Arico v. Township of Brick,* 281 *N.J.Super.* 471, 475, 658 *A.*2d 730 (App.Div.), *certif. denied,* 142 *N.J.* 515, 665 *A.*2d 1108 (1995), making clear that the excess insurer's obligation to pay does not accrue until the occurrence of the condition triggering the obligation. *See also* 8A Appleman, *Insurance Law and · Practice,* § 4909 at 390, 393 (1981). In this posture, we think it plain that plaintiff did not have a right against Aetna until exhaustion of her New York policy benefits and that any claim she might have earlier made against it would have been premature. ·Indeed, Aetna itself so recognized since the first affirmative defense of the eight pleaded in its answer asserted that "[n]o right or benefit, either contractual or statutory, has accrued or matured to the benefit of plaintiff. . . ." Thus it is clear that if the limitations statute were strictly and literally construed in this instance, coverage would be defeated *ab initio.* We do not believe that the Legislature intended such a result. We conclude, therefore, that in the special situation of interstate coverages where the New Jersey PIP policy serves as excess insurance, the limitations period does not begin to run until the right against the carrier accrues.

Finally, we note that in this case we do not see how Aetna has been prejudiced by the delay, and indeed, it does not assert that it has been. It has long since undertaken the defense of its insureds, the tortfeasors in plaintiff's automobile negligence action. It is fully aware of her damage claims as well as her liability claims, has had full access to her medical records, and has the right to have her examined by physicians of its own choosing.

We address one final matter. Plaintiff points to that provision of *N.J.S.A.* 39:6A–13.1 extending the limitations period to two years following the last payment of benefits. She argues that that provision applies here even though the suit is not against the same

carrier that made the payments. While we are satisfied that identity of the carrier was probably contemplated by the statute, we do not altogether reject the applicability of the proviso. To the extent the provision imposes upon the injured person the necessity of acting promptly following the last payment, that is, within two years, this plaintiff has met that requirement.

The order denying defendant's motion for summary judgment and granting plaintiff's cross motion for declaratory judgment is affirmed.