768 A.2d 269 (2000)
338 N.J. Super. 166
Nicholas SANTEEZ, Plaintiff,
v.
STATE FARM INSURANCE COMPANY and Allstate Insurance Company, Defendants.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided October 2, 2000.
*270 David J. Karbasian, Moorestown, for State Farm Insurance Company (Chierici, Chierici and Smith, Attorneys).
Lindsay K. O'Shaughnessy, Ramsey, for Allstate Insurance Company (McDermott & McGee, Attorneys).
Steven L. Kessel, Red Bank, for Plaintiff (Drazin and Warshaw, Attorneys).
McGANN, Jr., J.S.C. (Retired, on temporary recall).
This matter is before the court on cross-motions for summary judgment made by and against the insurance company defendants regarding the obligation to provide P.I.P. coverage to plaintiff, Santeez. The essential facts are not contested.
On October 12, 1998, while riding his bicycle on Broadway in the City of Long Branch (near its intersection with Seventh Avenue) the plaintiff, Nicholas Santeez, age 42, was thrown from his bicycle when it collided with an automobile driven by Ming F. Yu. As a result of his impact with the street, he was seriously injured and was taken by ambulance to Jersey Shore Medical Center.
His primary injury was a skull fracture above his right ear, causing a substantial loss of memory. After some 15 days of treatment at Jersey Shore Medical Center, he was transferred for rehabilitative therapy at John F. Kennedy Hospital in Edison, NJ. After a stay there he was recommended back to Jersey Shore Medical Center for further cognitive therapy in a program called "Life Span". He attended that program on an out-patient basis and did benefit from improved memory. However, after a time, the hospital would no longer provide that continuing therapeutic service because of his mounting substantial, unpaid bills.[1]
In addition to the cognitive problem, Santeez was treated for broken teeth by a dentist, and by a chiropractor for back problems exacerbated by the accident. He also lost about 80 per cent of the hearing in his right ear. On his emergency admission to the hospital he had surgery for a tracheotomy and thereafter had further surgery to close the opening.
Mr. Santeez has worked for over 14 years as an assistant trainer (exercise rider) of race horses. For the last 7 years he has been employed by Christopher Clement Racing Stablea horse trainer. He and his wife are domiciled in Florida. They own a mobile home located in a mobile home park in Indiantown, Florida. Santeez keeps a boat he owns at the marina operated by the mobile home park. They pay taxes to the State of Florida. Since the beginning of Santeez' employment with Clement, they winter in Florida *271 from approximately the end of October to the end of April. During that time Santeez works for Clement at the Pace and Park Training Center in Indiantown. Towards the end of April, he and his wife move to Long Branch where they rent an apartment to be near his work for Clement who follows the horses to Monmouth Park Race Track for the summer meet.[2] The Santeez' consider Florida their home even though they spend approximately the same time in New jersey as they do in Florida. When in New Jersey, they continue to pay the monthly space rental for their mobile home which remains in Florida; keep their Florida telephone in service and have their mail forwarded from Florida to the Long Branch address. Each year they have rented the same small apartment in a private home located at 387 West Columbus Place in Long Branch. When living there they pay $650 per month in rent. When they return to Florida they have the Long Branch post office forward mail to the Florida address. The landlord likes them and holds the apartment vacant during the winter months so that it will be available when they return n the spring. In turn, Santeez pays him $600 ($100/month for the vacant six months) as a token of appreciation. In that way there is no need to move furnishings back and forth from Florida. They simply put their clothes in their automobile for the trip in either direction. That arrangement had been essentially the same for the seven years preceding the accident.
Santeez owns a 1998 Saturn station wagon. He purchased it in Florida before coming north that Spring. The insurance on the new Saturn was provided by the defendant State Farm by a policy conforming to the insurance law of Florida. He has carried State Farm Insurance since 1989. His vehicles have always been registered in Florida since he moved there in 1989. He has a "Florida only" driver's license issued by the State of Florida since 1995. He also has a valid New Jersey drivers' license first issued to him in 1991.[3] He obtained the "Florida only" license at the suggestion of the State Farm agent because he could not obtain the Florida form of policy (with its lower premium) if he presented the New Jersey license. The Florida license was valid only when driving in Florida. When living in Long Branch, Santeez would drive his automobile to Monmouth Park where his work day began at 4:30 a.m. Then, he would drive back to the apartment at noon time and turn the vehicle over to his wife (she had a job locally) and Santeez would use his bicycle thereafter for pleasure or various chores.
According to its terms, the Florida State Farm policy pays P.I.P. benefits of up to $30,000$5000 for disability benefits and $25,000 medical bills. In connection with the October 12th accident, a claim for those payments was made and State Farm paid the full $30,000. It takes the position, here, that it cannot be ordered to pay more. The Yu vehicle was insured by Allstate with a policy required by New Jersey Law, including P.I.P coverage with a limit of $250,000. Santeez has asserted a claim against it. Allstate has refused to pay. NJSA 39:6A-4 requires that P.I.P coverage on any given automobile extend to pedestrians who sustain bodily injury caused by the named insured's automobile.
... (E)very standard automobile liability insurance policy issued ... shall contain personal injury protection benefits for the payment of benefits without regard to negligence ... to pedestrians sustaining bodily injury caused by the *272 named insured's automobile ... NJSA 39:6A-4.
"Pedestrian" means any person who is not occupying, entering into or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks. NJSA 39:6A-2(h).
Therefore, a person riding a bicycle fits the definition of "pedestrian". Conceptually, Santeez has a valid P.I.P. claim against Yu's carrier, Allstate.
However, as argued by Allstate, NJSA 39:6A-4.2 establishes a primacy of coverage such that the P.I.P. coverage for the named insured must be looked at first when the named insured is injured. Only if that policy limit is exhausted can the "pedestrian" coverage policy be looked to for additional medical payments. That is the correct position. See, Parisi v. Aetna Cas. and Sur. Co., 296 N.J.Super. 179, 183, 686 A.2d 386 (App.Div. 1997).
State Farm has already recognized its primacy by paying Santeez' claim to the limits of its policy. It believes that Allstate now must pay, under its "pedestrian" coverage, whatever outstanding balance there may be for income and medical treatment.
Allstate, in response, points to the "deemer" statute (NJSA 17:28-1.4) and concludes that it requires State Farm to do more than the printed word of its policy.
Prior to January 11, 1998, the "deemer" statute had provided (in pertinent language):

NJSA 17:28-1.4 Any insurer authorized to transact or transacting automobile.. Insurance business in this State.. which sells a policy providing automobile... liability insurance coverage or any similar coverage, .. in any other state .. Shall include in each policy, coverage to satisfy at least the .. personal injury protection benefits coverage pursuant to (NJSA 39:6A-4) ... whenever the automobile .. insured under the policy is used or operated in this State.
Any liability insurance policy subject to this section shall be construed[4] as providing the coverage required herein, and any name insured ... under that policy shall be subject to the tort option specified in (NJSA 39:6A-8).
Under that statute and the facts here, State Farm would have been subject to the "deemer" requirements. The statute was changed effective January 18, 1998 to read (in pertinent language):
Any insurer authorized to transact or transacting automobile insurance business in this State ... which sells a policy providing automobile ... liability insurance coverage or any similar coverage.. in any other state... shall include in each policy, coverage to satisfy at least the personal injury protections benefits coverage pursuant to ... (NJSA 39:6A-4) or (NJSA 17:28-1.3) ("pedestrians") for any New Jersey resident who is not required to maintain personal injury protection coverage pursuant to (NJSA 39-6A-4) and who is not otherwise eligible for such benefits whenever the automobile.., insured under the policy is used or operated in this State.

Any liability insurance policy subject to this section shall be construed as providing the coverage required herein, and any named insured... under that policy shall be subject to tort option specified in (NJSA 39:6A-8(a)).
The difference between the old and the new is at once apparent. The only condition for imposition of the "deemer" benefits under the former statute was that whenever being used or operated in New *273 Jersey, the vehicle be covered by liability insurance.
Added to that one condition by the amended statute, was a requirement (1) that the named insured be a resident of New Jersey; (2) that the named insured is not required to maintain P.I.P. insurance pursuant to (NJSA 39:6A-4) and (3) that the named insured is not otherwise eligible for such benefits whenever the automobile insured under the policy is used or operated in this state.
The additional conditions substantially restrict the effect of the "deemer" statute.

I
Santeez meets the first requirement. At the time of the accident he was a resident of New Jersey.
In Miller v. U.S.F. & G. Co., 127 N.J.Super. 37, 316 A.2d 51 (App.Div. 1974) the court made a detailed analysis of the law dealing with a person's "domicile" and "residence". It is worth reproducing at length to avoid a similar analysis here, since I completely agree with it. It begins at p. 42, 316 A.2d 51:
A "resident" is generally defined as ":One who has his residence in a place." Black's Law Dictionary (4th ed 1951), 1473; 2 Bouvier's Law Dictionary and Concise Encyclopedia (3rd rev.1914), 2920. Our courts have recognized the difference between the meaning of the words "residence" and "domicile," and have held that they are not convertible terms. State v. Garford Trucking, Inc., 4 N.J. 346, 353, 72 A.2d 851 (1950). In State v. Benny, 20 N.J. 238, 119 A.2d 155 (1955), the Supreme Court defined these terms and pointed out the underlying difference as follows:
Domicile has been variously defined as the place where a person "has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." Story, Conflict of Laws (8th ed.), § 41, p. 40, or "the habitation fixed in any place, without any present intention of removing therefrom," * * *

* * * * * *
Residence, on the other hand, though parallel in many respects to domicile, is something quite different in that the elements of permanency, continuity and kinship with the physical, cultural, social and political attributes which inhere in a "home" according to our accepted understanding, are missing. Intention adequately manifested is the catalyst which converts a residence from a mere place in which a person lives to a domicile. Where a person has two homes in which he lives and between which he divides his time, it is still his intention which creates one or the other as his domicile. 1 Beale, Conflict of Laws, § 10.3not the same intention necessary to create a domicile out of a mere residence but such additional intention manifested by a desire to exercise at one of the places the rights growing out of a true domicile and to become subject to the accompanying obligations. [at 250-251, 119 A.2d 155]
While a person may have only one true domicile, he may have more than one residence. State v. Garford Trucking, Inc., supra, Mercadante v. City of Paterson, 111 N.J.Super. 35,39, 266 A.2d 611 (Ch. Div. 1970), aff'd. 58 N.J. 112, 275 A.2d 440 (1971); Continos v. Parsekian, 68 N.J.Super. 54,58, 171 A.2d 663 (App.Div.1961). In fact, he may be a resident of more than one household for purposes of insurance. See Travelers Ins. Co. v. Mixon, 118 Ga. App. 31, 162 S.E.2d 830, 831 (Ct.App.1968); State Farm Mutual Automobile Inc. Co. v. Holloway, 423 F.2d 1281, 1283 (10 Cir. 1970).
As noted in the factual recitation (p. 169-170, 768 A.2d at 270-271), I find that plaintiff and his wife are domiciled in Florida. They consider it to be their home, in accordance with the common statement, *274 "Home is where the heart is". They move to New Jersey for part of the year but fully intend to return hometo Florida where their cherished possessions remain.
They reside in Florida for slightly more than a mathematical one-half of the year and then reside in New Jersey for the other part of the year.[5] In that they are no different than many retired persons who are domiciled in New Jersey; are resident here for the balmy months; move to Florida where they reside for the winter months, but always plan to return "home" in the spring.
Based on the seven year period of living in two places during the year, the Santeez' are residents of Florida for part of the time and then residents of New Jersey for the balance of the time. The way they handle their mail is clear indicia of their intent. They sign a "change of residence" form for the Postal Service twice a year. Therefore, for the purpose of the "deemer" statute, Santeez was a resident of New Jersey.

II
He also meets the fourth requisite since his automobile (insured by the State Farm policy) was being used and operated by him and his wife while in New Jersey.

III
He does not qualify under the third condition because when operating his vehicle in New Jersey he was not eligible for "such benefits", i.e., the P.I.P. benefits provided by NJSA 39:6A-4. He was limited to those provided by the State Farm policy.

IV
He does not qualify because, as a resident of New Jersey as I have determined above, he was required to maintain the P.I.P. coverage mandated by NJSA 39:6A-4. NJSA 39:6A-3 requires ":Every owner ... of an automobile ... principally garaged in this State" to "maintain automobile liability insurance coverage" as required by NJSA 39:6A-4.
Having found Santeez to be a resident of New Jersey as set forth above, then the additional finding that his vehicle "was principally garaged in New Jersey" necessarily follows Chalef v. Ryerson, 277 N.J.Super. 22, 28, 648 A.2d 1139 (App.Div. 1994).
For the foregoing reasons I find that the "deemer" statute is not applicable, that State Farm has met its contractual obligation and therefore, that Allstate, as the "stacked" secondary payor is responsible for Santeez P.I.P. benefits up to the limits of its policy. Parisi v. Aetna Cas. And Sur. Co.,supra.
NOTES
[1] A judgment for $89,423.00 has been entered in favor of Jersey Shore Medical Center against Santeez. Further action on it has been withheld pending this resolution of the obligation to pay.
[2] Their division of time between Florida and New Jersey is governed by the racing days allocated to Monmouth Park by the New Jersey Racing Commission.
[3] When renewing his Florida driver's license, he advised the motor vehicle person that he had a NJ license and relied on that for out-of-state driving. When he renewed his NJ license, he advised the motor vehicle agent of his Florida-only license. Neither person indicated any legal objection to that reality.
[4] The reference to the statute as the "deemer" statute appears to stem from the underlined words in the statute.
[5] If there is a difference in the amount of time spent in each state, I find that they spend slightly more time in Florida than in New Jersey.