818 A.2d 474 (2003)
358 N.J. Super. 555
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 2003.
Decided March 25, 2003.
*475 Gregory T. Keller, Livingston, argued the cause appellant (Stein, Bliablias, McGuire, Pantages & Gigl, attorneys; Mr. Keller, on the brief).
David J. Dickinson, Milburn, argued the cause for respondent (McDermott & *476 McGee, attorneys; Mr. Dickinson, on the brief).
Before Judges CUFF, LEFELT and WINKELSTEIN.
LEFELT, J.A.D.
The deemer statute, N.J.S.A. 17:28-1.4, mandates that some automobile insurance companies include within their out-of-state issued policies certain New Jersey automobile insurance coverages. Government Employees Insurance Company (GEICO), a company not authorized to transact any insurance business in New Jersey, relying on a 1998 amendment to the deemer statute, contends that it is subject to the statute as an affiliate of an insurance company that is authorized to transact some forms of insurance business in New Jersey. If GEICO is subject to the deemer statute under the 1998 amendment and therefore must provide personal injury protection(PIP) coverage for its out-of-state insureds, then GEICO maintains that it need not reimburse Allstate Insurance Company, under N.J.S.A. 39:6A-9.1, for Allstate's payment of PIP benefits to its insureds for injuries sustained in New Jersey accidents with GEICO insured tortfeasors.
GEICO appeals from Judge Pisansky's declaratory judgment, concluding that GEICO is not covered by the 1998 amendment to the deemer statute and not exempted from reimbursing Allstate under the PIP reimbursement statute. We agree with the trial judge's conclusion and therefore affirm the declaratory judgment.

I.
We begin by summarizing the pertinent facts and procedural history. While Allstate is authorized to underwrite all types of insurance in New Jersey, GEICO is a Maryland Corporation underwriting private-passenger automobile insurance in every state except New Jersey and Massachusetts. GEICO withdrew from the New Jersey automobile insurance market around 1976. In 1996, GEICO was acquired by Berkshire-Hathaway Corporation. Berkshire also owns stock in a number of other companies including 82% of Central States Indemnity Company of Omaha (Central States), which is authorized to transact certain limited forms of non-automobile and non-motor vehicle insurance in New Jersey, including accident, health, credit and economic security insurance. The record does not reflect whether Central States is authorized to write automobile insurance policies in any state, and there are no ties between GEICO and Central States except for the common ownership of stock in both companies by Berkshire.
In 1998 and 1999, three New Jersey accidents involving vehicles insured by Allstate were allegedly caused by GEICO out-of-state insureds. In each of these three accidents, Allstate paid PIP benefits to eligible persons under N.J.S.A. 39:6A-4. Allstate then sought reimbursement from GEICO under N.J.S.A. 39:6A-9.1. Allstate's reimbursement theory was that GEICO was not required to provide PIP coverage for its out-of-state insureds and therefore was responsible to Allstate under the reimbursement statute. Allstate currently has over fifty pending claims of this type against GEICO.
GEICO contends that it is obligated to provide PIP benefits based on a 1998 amendment to the deemer statute and its affiliation with Central States and has, in fact, provided PIP benefits in accordance with the amendment since its effective date on January 19, 1998. Because all of the accidents for which Allstate seeks reimbursement occurred after the deemer statute amendment's effective date, GEICO refused to submit to arbitration.
*477 Following a number of similar attempts by Allstate to obtain PIP benefit reimbursement, GEICO filed a declaratory judgment action seeking to establish its right not to reimburse Allstate. After GEICO moved for summary judgment, the motion judge denied the motion and interpreted the deemer statute to require "a company authorized to transact automobile insurance in this state or affiliated with such company writing policies of automobile insurance outside this state [to offer PIP benefits] when the automobile insured under the policy is used or operated in this State." Thus, according to the motion judge, GEICO was not required to maintain PIP coverage under the deemer statute and consequently was required to reimburse Allstate under N.J.S.A. 39:6A-9.1. After the judge certified the decision as final, under R. 2:2-3(a)(3), and stayed all present and future PIP reimbursement claims by Allstate against GEICO, GEICO appealed.

II.
We first turn to the knotty task of construing the 1998 amendment to the deemer statute. The deemer statute was originally enacted in 1985, P.L. 1985, c. 520 § 18, and is part of this State's no fault automobile insurance plan. "The legislation was in response to a growing number of cases where New Jersey residents were injured in accidents caused by out-of-state drivers whose insurance coverage was less than New Jersey's statutory requirements" and was intended "to reduce the demands on the Unsatisfied Claim and Judgment Fund." Craig and Pomeroy, New Jersey Auto Insurance Law, comment 1:2-6 (2003).
The deemer statute requires some insurers to include in their out-of-state policies PIP and other New Jersey coverages to be available whenever the insured automobile is operated within this State. Insurers authorized to transact or transacting automobile insurance in this State must file with the Department of Banking and Insurance written certification of compliance with the statute. Policies subject to the statute that do not contain express provisions complying with the statute, however, are deemed to comply. Lusby By and Through Nichols v. Hitchner, 273 N.J.Super. 578, 583-84, 642 A.2d 1055 (App.Div. 1994). And from this consequence, the law acquired the name by which it is commonly known, the deemer statute.
The purpose of the statute was to lower premiums, reduce litigation and make PIP benefits available to all. Watkins v. Davis, 259 N.J.Super. 482, 491, 614 A.2d 189 (Law Div.1992), aff'd, 268 N.J.Super. 211, 633 A.2d 112 (App.Div.1993). It sought to ensure that New Jersey-authorized insurance companies provide to their out-of-state insureds traveling in New Jersey the same protections required of in-state insured vehicles. Martin v. Home Ins. Co., 141 N.J. 279, 282, 661 A.2d 808 (1995).
The statute has been amended three times. The first amendment in 1989, L. 1988, c. 119, § 1, imposed the verbal threshold, N.J.S.A. 39:6A 8(b), on out-of-state drivers who have accidents in New Jersey. The third amendment, L. 1998, c. 21, § 72, effected only a minor change which does not bear on this matter. It is the second amendment, effective in January 1998, (the 1998 amendment) upon which GEICO bases its argument.
The underlined portions of the following quotation represent the 1998 amendment. The portion of the following quotation that is not underlined represents the law as it existed before the 1998 amendment:

*478 Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the personal injury protection benefits coverage pursuant to [N.J.S.A. 39:6A-4] or [N.J.S.A. 17:28-1.3] for any New Jersey resident who is not required to maintain personal injury protection coverage pursuant to [N.J.S.A. 39:6A-4] and who is not otherwise eligible for such benefits, whenever the automobile or motor vehicle insured under the policy is used or operated in this State. In addition, any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of [N.J.S.A. 39:6B-1] or [N.J.S.A. 39:6A-3], the uninsured motorist insurance requirements of [N.J.S.A. 17: 28-1.1], and personal injury protection benefits coverage pursuant to [N.J.S.A. 39:6A-4] or of [N.J.S.A. 17:28-1.3], whenever the automobile or motor vehicle insured under the policy is used or operated in this State.
[N.J.S.A. 17:28-1.4]
The first notable observation regarding the amendment at issue, the underlined text portions of the above quotation, is that the bulk of the amendment constitutes one rather long, complex, cumbersome sentence. The first sentence also repeats virtually verbatim the language contained in the second sentence, which is the statutory section almost exactly as it existed before the amendment.
After carefully reading the text of the amendment, we have concluded that the text is ambiguous and its accurate meaning difficult to discern. In fact, the amendment has been characterized as "extraordinarily sloppy." Craig & Pomeroy, supra, Comment 1:2-11. We decline to utilize such pejorative language in describing the amendment, but it suffices to note that the language of the amendment bears at least two possible meanings. Before we analyze these meanings, we identify those parts of the text the meaning of which is agreed upon by the parties and is relatively self-evident.
The parties agree that the deemer statute applies to policies that are issued outside the territorial borders of New Jersey. The statute requires that certain New Jersey insurance coverages be included within some out-of-state and Canadian automobile insurance policies. It is also agreed that insurers authorized to transact automobile insurance business in this State must include in any of their out-of-state or Canadian automobile policies the several specified New Jersey coverages, including PIP benefits, to be available whenever the insured vehicle is operated within New Jersey.
The portion of the amendment that is ambiguous and the subject of the construction task at hand is the phrase "controlling or controlled by, or under common control by, or with, an insurer authorized to transact *479 or transacting insurance business in this State." Neither our research nor the research of any party has disclosed any previous decision construing this language, which appears to refer to a subsidiary, parent, and commonly controlled sister corporation. We refer to this portion of the statute as the controlling or affiliated insurer language.
The first plausible meaning for the controlling or affiliated insurer language within the amendment is pressed by Allstate. Allstate argues that the controlling or affiliated insurer language, refers back to "Any insurer authorized to transact or transacting automobile or motor vehicle business in this State...." Thus, under this construction, before a controlling or affiliated insurer can be required to include PIP benefits in its out-of-state policies, the insurer must be a subsidiary, parent, or commonly controlled sister corporation to a company authorized to do automobile insurance business in this State. If so, then the insurer authorized to transact New Jersey automobile business and its subsidiary, parent, or commonly controlled sister corporations which are authorized to transact any insurance business in this State must also include PIP coverages in their out-of-state automobile policies. This was the construction accepted by Judge Pisansky.
Under this construction, therefore, even though GEICO's affiliate Central States is authorized to transact some insurance business in this State, GEICO would not be required to provide PIP benefits, because it is not authorized to transact automobile insurance business in this State and is not affiliated with any such company. Similarly, Central States would not be required to offer PIP benefits, again because it is not authorized to transact automobile insurance in this State and not affiliated with any such company.
GEICO offers a second plausible construction of the deemer statute. Under GEICO's construction, any insurer which is controlling, controlled by or affiliated with another insurance company authorized to transact any insurance business in New Jersey must include PIP benefits in its out-of-state automobile policies. Under this construction, the controlling and affiliated insurer language of the 1998 amendment refers back to "Any insurer."
If we accept this construction, GEICO would be required to offer PIP benefits, because it is affiliated with Central States, a carrier that is permitted to transact certain insurance business in this State. Central States, however, would not be required to offer PIP benefits because it is not authorized to transact automobile insurance business in this State and is not controlling, controlled by or affiliated with another company authorized to transact any type of insurance business in New Jersey.
This construction thus creates the inconsistent result that disturbed the trial court. Why should GEICO, which is not authorized to transact any insurance business in this State have to provide PIP benefits, when Central States, which is authorized to transact some business in this State, is not?
Both constructions argued by the parties, however, appear plausible given the language utilized by the Legislature in adopting the 1998 amendment. Because the language of the amendment could bear either of these constructions, we must determine which meaning best fosters the legislative purpose. When legislative language is ambiguous, we "must interpret the statute in a manner consistent with the legislative intent." City of Camden v. Kenny, 336 N.J.Super. 53, 64, 763 A.2d 777 (App.Div.2000)(quoting County of Camden *480 v. S. Jersey Port, 312 N.J.Super. 387, 396-97, 711 A.2d 978 (App.Div.), certif. denied, 157 N.J. 542, 724 A.2d 801 (1998)). The legislature's intent may be found "not only from the terms of the Act, but also from its structure, history and purpose." Martin, supra, 141 N.J. at 285, 661 A.2d 808 (quoting Fiore v. Consol. Freightways, 140 N.J. 452, 471, 659 A.2d 436 (1995)). In addition, the history of the enactment may be consulted to determine legislative intent. E.g., New Jersey Pharm. Assoc. v. Furman, 33 N.J. 121, 130, 162 A.2d 839 (1960).
In reviewing the structure of the deemer statute, we note that by adding the amendment to the original text, the Legislature created two classifications. The amendment, included within the underlined first sentence of the above quotation, requires the controlling or affiliated insurer to be authorized to transact any insurance business in this State, not necessarily motor vehicle or automobile business. The original portion of the statute, the second sentence that is not underlined in the above quotation, requires that the controlling or affiliated insurer be authorized to transact not any insurance business, but motor vehicle or automobile insurance business in this State.
An insurer meeting the requirements of the first sentence of the deemer statute, the 1998 amendment, would need to provide in its out-of-state policies "coverage to satisfy at least [PIP benefits] for any New Jersey resident who is not required to maintain personal injury protection coverage,... and who is not otherwise eligible for such benefits, whenever the automobile or motor vehicle insured under the policy is used or operated in this State." N.J.S.A. 17:28-1.4; see Santeez v. State Farm Ins. Co., 338 N.J.Super. 166, 173, 768 A.2d 269 (Law Div.2000) (dealing with a State Farm insurance policy issued in Florida and determining that where the accident happened in New Jersey, because plaintiff was required as a New Jersey resident to obtain PIP coverage, the amended provision of the deemer statute was inapplicable).
An insurer meeting the requirements of the second sentence, the original deemer statute, as amended to require the controlling or affiliated insurer to be authorized to transact "automobile or motor vehicle insurance business in this State," has broader obligations to provide New Jersey insurance benefit coverages in its out-of-state policies. Under this portion of the statute, a qualifying insurer must include "liability insurance requirements," as well as "uninsured motorist insurance requirements" and "personal injury protection benefits coverage."
The statutory structure thus distinguishes between controlling or affiliated insurers who are authorized to transact any "insurance business in this State" and those that are authorized to transact "automobile or motor vehicle insurance business in this State." Only the latter insurers must provide in out-of-state policies liability, uninsured motorist, and PIP coverages comparable to those which are mandatory in New Jersey issued policies.
The consequence of this dichotomy can be significant. Under the original statute, non-New Jersey residents could collect New Jersey PIP benefits from any insurer that was included within the deemer statute. Adams v. Keystone Ins. Co., 264 N.J.Super. 367, 371, 624 A.2d 1008 (App. Div.1993) (Delaware resident injured in New Jersey entitled to recover PIP benefits, where insurer transacted business in New Jersey). For the Adams case to be similarly decided after the 1998 amendment, Keystone Insurance Company would have to fall within the second portion of the statute, which constitutes the deemer *481 statute as it existed before the amendment. If Keystone qualifies only under the amended section, the case would be decided differently because pursuant to that section, PIP benefits are provided "for any New jersey resident who is not... otherwise eligible for such benefits." Adams, as an insured Delaware resident, would not be entitled to collect. Therefore, the dichotomy of the statute's two sections distinguishes between those insurers that are required to provide PIP benefits for some New Jersey residents only and insurers who must provide PIP coverage to protect New Jersey and non-New Jersey residents.
The Legislature described its 1998 amendment in the statement accompanying the Bill as clarifying "insurance coverage compliance requirement for out-of-state automobiles and motor vehicles." The statement does not reveal why the Legislature believed the law required clarification, but describes, in pertinent part, the original statute as requiring "insurers authorized to transact ... motor vehicle insurance business in this State, or controlling or controlled by an insurer authorized to transact ... insurance business in this State, to provide to the out-of-state insureds ... the same automobile or motor vehicle insurance coverage required of New Jersey drivers whenever the automobile... insured under the policy is used or operated in this State."
This portion of the bill statement does not assist our construction task because the description of the prior legislation can bear either GEICO's or Allstate's suggested construction. But, the second portion of the bill statement does provide some interpretive assistance.
In the second portion of the statement, the Legislature described the amendment as providing "that, if the controlling or affiliated insurer is not transacting automobile or motor vehicle insurance business in this State, the insurers' out-of-state insureds must be provided policy coverage to satisfy at least the personal injury protection benefits coverage to any New Jersey resident who is not required to maintain personal injury protection coverage and who is not otherwise eligible for such benefits."
Curiously, while the statement's explanation of the amendment focuses on the controlling or affiliated insurer, the statement does not indicate that the controlling or affiliated insurer must at least be "authorized to transact ... insurance business in this State." The explanation also does not relate the controlling or affiliated insurer to any insurer authorized to transact automobile insurance business in this State. Instead, the statement simply indicates that the amendment requires the controlling or affiliated insurer which is not transacting automobile insurance business in this State to provide PIP coverage in its policies to protect those New Jersey residents who are not required to maintain PIP coverage.
Read literally, the statement means that the amendment requires any insurer not authorized to do any insurance business in this State to include within its out-of-state policies, PIP coverage to protect otherwise uninsured New Jersey residents. Such a far reaching construction, however, overlooks the actual language the legislature utilized in the amendment itself.
In our opinion, the explanatory statement merely contrasts the language of the amendment with the prior statutory language and must mean that the controlling or affiliated insurer who is not authorized to transact automobile insurance business in this State, must be at least "authorized to transact ... insurance business in this State" in order to be compelled to *482 include PIP benefits within their out-of-state policies to protect some New Jersey residents.
Read in this way, the statement describes the dichotomy or two classifications that result from the amendment and which we have observed in its structure. In the first category, the controlling or affiliated insurer is not authorized to transact automobile insurance in this State, but is authorized to transact some other type of insurance business in this State. These insurers are only obligated to provide PIP coverage to New Jersey residents who are not required to carry that coverage for themselves. The original portion of the statute encompasses the second category, and requires additional New Jersey coverages in out-of-state policies only when the controlling or affiliated insurer is authorized to transact "automobile or motor vehicle insurance business in this State."
We thus detect, in both the structure of the amendment and the legislative statement accompanying the amendment, an intent to distinguish between two types of affiliated insurers, those authorized to do some insurance business and those authorized to do automobile insurance business in this State. We can discern no Legislative intent to modify the deemer statute in any way other than by establishing the two classifications of insurance companies and requiring each classification to offer different coverages.
If the out-of-state carrier is authorized to transact automobile insurance business in this State then it would be subject to the amendment and the original portion of the statute. This insurance company would have to provide the more extensive coverages that were required under the statute before the amendment. It is only the controlling or affiliated insurer which now is subject to different requirements depending on its New Jersey authorization.
As previously discussed, Allstate claims that the controlling or affiliated carrier must be the subsidiary, parent or commonly controlled sister corporation to the authorized carrier, and GEICO contends that there need be no connection whatsoever. GEICO argues, therefore, that the controlling or affiliated carrier language is entirely separate from the authorized insurer language and must be separately considered.
Except for the resulting two classifications and the more limited PIP benefits to be provided under the amendment, however, there has been no other change in the language utilized by the Legislature. Thus, we also discern no intent within the amendment to modify whatever relationship existed in the text of the original statute between the controlling or affiliated insurer and the "insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State," which is the language immediately preceding the controlling or affiliated insurer language in both the amended text and the original text of the deemer statute.
We thus conclude that prior constructions of the deemer statute are relevant to determine the relationship, if any, between the insurer authorized to transact insurance business in this State and the controlling or affiliated insurer. We know that no case has previously construed the meaning of the controlling or affiliated insurer language, but in all prior cases dealing with the deemer statute, our courts have consistently required that any insurer subject to the deemer statute be authorized to conduct some insurance business in this State.
The Supreme Court has found that "any policy issued by an insurance company qualified to do business in New Jersey covering a vehicle while it is being operated *483 in New Jersey [must provide] the same type of PIP benefits as are required under New Jersey law, N.J.S.A. 17:28-1.4." Martin, supra, 141 N.J. at 282, 661 A.2d 808. But, out-of-state insurers that had no affiliation with authorized New Jersey companies have no obligation to provide PIP benefits. See Canal Ins. v. F.W. Clukey Trucking, 295 N.J.Super. 131, 137, 684 A.2d 953 (App.Div.1996) (N.J.S.A. 17:28-1.4 was not applicable where accident occurred in New Jersey involving Canal Insurance company's insured, where Canal was not licensed to write insurance in New Jersey and where no evidence showing that Canal "`control[s] or [is] controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State.'").
In Whitaker v. Devilla, 147 N.J. 341, 687 A.2d 738 (1997), which was decided by the Supreme Court the year before the deemer statute was amended, the Court held that the insured who was rear-ended in New Jersey was subject to the verbal threshold under the deemer statute even though the insured held an out-of-state Prudential policy without the verbal threshold. Id. at 358, 687 A.2d 738. In that decision, the Court, without deciding on the propriety of the assumption, noted that the Legislature "assumed that it could not compel insurers not authorized to transact business in New Jersey to provide non-resident insureds injured in New Jersey the minimum liability, uninsured motorist, and personal injury protection benefits mandated by the deemer statute." Id. at 356, 687 A.2d 738. That assumption is reflected in all of the cases interpreting the deemer statute before the amendment. In every instance, to be subject to the deemer statute, the carrier needed authorization to do some insurance business in New Jersey. E.g., Dyszel v. Marks, 6 F.3d 116, 127 (3d Cir.1993) (Pennsylvania plaintiffs subject to deemer were insured "companies doing business in New Jersey"); D'Orio v. W. Jersey Health Sys., 797 F.Supp. 371, 373 (D.N.J.1992) (deemer applies "provided the insurer does business in New Jersey."); Martin, supra, 141 N.J. at 282, 661 A.2d 808 ("as a condition of doing business in New Jersey, an insurance company must" comply with the deemer statute); Comitale v. Masters, 302 N.J.Super. 291, 295, 695 A.2d 337 (App. Div.1997) ("Plaintiff's insurer is not authorized to do business in New Jersey, and, therefore, the deemer statute is inapplicable."); Loftus-Smith v. Henry, 286 N.J.Super. 477, 480, 487, 669 A.2d 852 (App.Div.1996) (because defendant's insurance policy was issued by North American Indemnity Company, "a Louisiana corporation, apparently authorized to transact business in Arizona but not New Jersey," defendant was not subject to deemer statute); Taylor v. Rorke, 279 N.J.Super. 63, 67, 652 A.2d 207 (App.Div.), certif. denied, 141 N.J. 99, 660 A.2d 1197 (1995) (plaintiffs, out-of-state residents, were insured by a company "authorized to do business in New Jersey" and therefore subject to deemer); Taylor-Segan v. Rajagopal, 275 N.J.Super. 286, 289, 645 A.2d 1272 (App.Div.1994) (Plaintiff, a Pennsylvania resident, was insured by Kemper Insurance Company "which also writes auto insurance in New Jersey" and subject to deemer); Phillips v. Phillips, 267 N.J.Super. 305, 308, 631 A.2d 564 (App.Div.1993) (defendants were Pennsylvania residents insured by Nationwide Insurance Company through its subsidiary Wausau Insurance Companydeemer applied, but no discussion of insurers' status in New Jersey); Adams, supra, 264 N.J.Super. at 369, 624 A.2d 1008 (Keystone "was authorized to do business in New Jersey and does, in fact, transact business in this State"deemer applied); Watkins, supra *484 259 N.J.Super. at 486, 614 A.2d 189 (the statute was applied to plaintiff Pennsylvania resident insured by Aetna Life and Casualty Insurance Company, which "was also authorized to issue policies of automobile insurance in the State of New Jersey").
Thus, there is no case law support for GEICO's construction of the deemer statute which, if accepted, would result in a carrier who lacks any authorization to write insurance business in New Jersey being subject to the deemer statute. This is completely contrary to the legislative "assumption" noted by the Supreme Court in Whitaker and every case that has previously interpreted the statute.
Because the amendment establishes a safety net to protect residents who are not otherwise eligible for PIP benefits, one could argue that the Legislature intended to hang the net as widely as possible. While the record does not include any indication of how many carriers would be subject to either construction, we assume that GEICO's construction would affect more carriers than Allstate's. If the Legislature intended to change the "assumption" noted by the Court, however, we are convinced that it would have referenced Whitaker in the legislative statement or otherwise more specifically noted this intent. Instead, the amendment's structure and legislative history signals that no such modification was intended.
In addition, under GEICO's interpretation, it would be subject to the deemer statute solely because of its affiliation with Central States which writes some insurance business in New Jersey. If Central States would not be subject to the deemer statute under this construction, we can find no support for subjecting GEICO to its dictates. It makes absolutely no sense to subject GEICO to the deemer statute and not Central States, which has the only direct tie to New Jersey. If we were to accept GEICO's construction, it would be the first application of the deemer statute to a carrier that neither writes nor is authorized to write any insurance business in New Jersey.
Moreover, while we acknowledge the ambiguity of the language chosen by the Legislature, we note that New York's version of the deemer statute seems consistent with Allstate's suggested interpretation. New York provides that "[e]very insurer authorized to transact or transacting business in this state, or controlling or controlled by or under common control by or with such an insurer which sells a policy providing motor vehicle insurance coverage or any similar coverage in any State or Canadian province ..." (emphasis added). N.Y. Ins. Law § 5107(a)(McKinney 2002). The record does not provide any reason to interpret New Jersey's statute differently from New York's.
In addition, if the Legislature intended courts to read the deemer statute like GEICO argues, we believe the Legislature would have added a comma after "Any insurer" in the phrase "Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State," which language precedes the controlling or affiliated insurer language. While punctuation is considered when interpreting legislative language, Moore v. Magor Car Corp., 27 N.J. 82, 87, 141 A.2d 536 (1958), here it is simply another indication that no major change in the deemer statute's reach was intended.
Furthermore, we must be cognizant of the fact that this legislation affects out-of-state issued insurance policies. GEICO has provided no evidence that the Legislature intended to affect carriers which are not already subject to this State's regulatory authority. Any insurance company that is authorized to write insurance policies in New Jersey is subject to the authority *485 of this State's Commissioner of Banking and Insurance. The Commissioner has authority to approve companies that wish to transact some type of insurance business in this State, N.J.S.A. 17:17-10. Should the Commissioner approve a particular company for doing business in this State, then the Commissioner also must approve the company's rates, N.J.S.A. 17:29A-6. GEICO has no connection with the Commissioner and its affiliate, Central States, is subject to the Commissioner's authority only with respect to the types of insurance it writes, which does not include automobile insurance. GEICO has provided no evidence that the Legislature intended to affect policies written by insurance companies which are otherwise not subject in any way to the authority of the Commissioner.
We also agree with Allstate that New Jersey's ability to impose the requirements of the statute on out-of-state carriers is somewhat restricted by the ability of the New Jersey courts to obtain in personam jurisdiction over the carrier and compel them to comply with New Jersey law. See Pfundstein v. Omnicom Group Inc., 285 N.J.Super. 245, 251, 666 A.2d 1013 (App. Div.1995). While there may be other ways to enforce the deemer dictates, such as suit by insureds in the foreign carrier's home state, there would be some difficulty should a person or entity wish to hale GEICO into the courts of this State.
There are also constitutional problems that would be created if New Jersey asserted jurisdiction over out-of-state companies not transacting any business in this State and without any ties to this State. Watkins, supra, 259 N.J.Super. at 492, 614 A.2d 189. "[A] state is without power to exercise extra-territorial jurisdiction by attempting to regulate and control activities wholly beyond its boundaries." Adams, supra, 264 N.J.Super. at 376, 624 A.2d 1008. We do not mean to suggest, however, that the jurisdiction and constitutional problems are insurmountable. They may not be. But we do suggest that GEICO has failed to demonstrate in this case either that the Legislature intended to expand the scope of the deemer statute to reach companies that are not authorized to do any business in this State or even that there is a need for the statute to reach that far.
The record contains no information regarding GEICO's experience offering PIP benefits to protect New Jersey residents under the deemer amendment. We do not know the financial impact of GEICO's compliance with the 1998 amendment. We likewise have no information on the financial impact or consequences upon New Jersey residents of either construction pressed by the parties. Revealingly, however, the original deemer statute could have been read by GEICO in the same manner as GEICO contends the amendment should now be construed. No change was made in the key language and yet GEICO has not indicated how its previous construction of the deemer statute differed from the construction it now presses. Presumably, however, GEICO did not believe it was obligated under the previous language to supply New Jersey comparable liability, uninsured motorist, and PIP coverages to its out-of-state insureds.
Finally, this State has a strong interest "in compensating individuals with economic losses, while not raising the cost of automobile insurance." Taylor v. Rorke, supra, 279 N.J.Super. at 71, 652 A.2d 207. The reason we preclude PIP paying insurance companies from seeking reimbursement from each other is "because the cost of paying PIP benefits would likely balance out among them and therefore would keep rates stable." Unsatisfied Claim & *486 Judgment Fund Bd. v. New Jersey Mfrs. Ins. Co., 138 N.J. 185, 198-202, 649 A.2d 1243 (1994). Should GEICO qualify as a PIP paying carrier under its construction of the deemer statute, we question whether such a limited payment of PIP ought to insulate a carrier like GEICO from reimbursement.
Under the 1998 amendment, the PIP benefits that are deemed to protect New Jersey residents apply only if the resident has no other source to obtain these benefits. Thus, in essence, the coverage would provide protection to pedestrians or commercial insureds who have no connection to any PIP insured vehicle. See N.J.S.A. 39:6A-4. The largest category of these protected persons, therefore, is likely to be pedestrians who do not own an automobile and are not members of an insured family. This mandated coverage is much narrower than the general PIP coverage required for New Jersey policies and seems closely related to pedestrian only coverage which does not insulate a carrier from reimbursement obligations. N.J.S.A. 39:6A-9.1. If such a result creates a windfall for GEICO, and Allstate is unable to obtain reimbursement, then there will be a tendency for New Jersey insurance rates to increase, which would be contrary to the general intent of our No Fault law. Cf., Martin, supra, 141 N.J. at 286, 661 A.2d 808.
Thus, we conclude that the Legislature intended to apply the first part of the deemer statute only to insurers authorized to transact or transacting automobile or motor vehicle insurance business in this State and to carriers controlling or affiliated with the authorized insurer who are authorized to transact some insurance business in New Jersey.
We also believe irrelevant all of the other corporate relationships argued by GEICO, not considered by the trial court, as justification for subjecting it to the amendment of the deemer statute. Consequently, Allstate's motion to strike portions of GEICO's brief and appendix is moot.

III.
We proceed to determine whether Allstate is entitled to reimbursement from GEICO. In pertinent part, N.J.S.A. 39:6A-9.1 provides that an insurer has "the right to recover the amount of [PIP] payments from [the insurer of] any tortfeasor who was not, at the time of the accident, required to maintain [PIP] ... coverage, other than for pedestrians, under the laws of this State, including [PIP] coverage required to be provided in accordance with section 18 of P.L.1985, c. 520 (C. 17:28-1.4)."
The statute permitting reimbursement, N.J.S.A. 39:6A-9.1, is part of the New Jersey Automobile Reparation Reform Act, the "No Fault law," N.J.S.A. 39:6A-1 to -35. A party seeking reimbursement of PIP benefits under N.J.S.A. 39:6A-9.1 must be an insurer that has "paid benefits as a result of an accident occurring in New Jersey." Unsatisfied Claim & Judgment Fund Bd., supra, 138 N.J. at 191-92, 649 A.2d 1243. The right of reimbursement provided by N.J.S.A. 39:6A-9.1 is a direct right or reimbursement from the insurer, not a subrogation right. Id. at 191, 649 A.2d 1243. Such reimbursement may be obtained by agreement or inter-insurance company arbitration. N.J.S.A. 39:6A-9.1. Allstate, under the facts of this case, is eligible for reimbursement because it has paid PIP benefits to its insureds as a result of New Jersey accidents.
Permitting New Jersey insurance companies, like Allstate, paying PIP benefits to seek reimbursement is designed to reduce automobile insurance premiums and ensure that the cost of PIP benefits "`will be borne by ... the individuals responsible for the injury who, in good conscience, ought to pay them.'" State Farm *487 Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 146 N.J. 1, 14, 679 A.2d 620 (1996) (quoting Aetna Ins. Co. v. Gilchrist Bros., 85 N.J. 550, 568, n. 2, 428 A.2d 1254 (Sullivan, J., dissenting)). Reimbursement is permitted to be collected, however, only against the tortfeasor's insurer if that insurer is not required to provide PIP coverage. Unsatisfied Claim & Judgment Fund Bd., supra, 138 N.J. at 193, 649 A.2d 1243. A voluntary payment of PIP benefits by an insurer not obligated to provide PIP coverage does not raise a reimbursement obligation. N.J.S.A. 39:6A-9.1.
Under the construction of the deemer statute we have embraced, GEICO is voluntarily providing PIP benefits in accordance with section 18, P.L.1997, c. 436, the 1998 amendment, which is codified at N.J.S.A. 17:28-1.4. Under N.J.S.A. 39:6A-9.1, reimbursement is not permitted from those insurance companies providing "personal injury protection coverage required to be provided in accordance with section 18 of P.L.1985, c. 520 (C. 17:28-1.4)." GEICO is not providing PIP benefits to its out-of-state insureds under section 18 of P.L.1985, c. 520, the original unamended deemer statute, and is not required to provide PIP benefits under the amendment, section 18, P.L.1997, c. 436.[1] Consequently, GEICO must reimburse Allstate.

IV.
We have thus concluded that the 1998 amendment to the deemer statute was not intended to include insurance companies that are not authorized to write insurance business in New Jersey. GEICO, an out-of-state insurance company which is not authorized to do any type of New Jersey insurance business, is not subject to the deemer statute. Because GEICO is not obligated to provide PIP benefits, it is not excluded from reimbursement and must reimburse Allstate for the PIP benefits Allstate had to pay that were caused by GEICO insured tortfeasors.
We believe that our construction of the 1998 amendment to the deemer statute comports with the legislative intent. Should we be mistaken, however, we invite the Legislature to quickly remedy our obviously unintended interpretive mistakes. Martin, supra, 141 N.J. at 290, 661 A.2d 808.
Affirmed.
NOTES
[1] We need not decide that reference to the original deemer public law in the reimbursement statute is determinative in this case because GEICO is not subject to either the original deemer requirements or those mandated by the amendment. We do note, however, that the reimbursement statute was amended in 1998, after the deemer statute was amended. L. 1998, c. 21 § 13. The amendment to the reimbursement statute did not eliminate or modify the reference to the original deemer statute, "section 18 of P.L.1985, c. 520 (c.17:28-1.4)."