510

876 A.2d 335

COOPER HOSPITAL UNIVERSITY MEDICAL CENTER, PLAIN-
TIFF–APPELLANT, v. PRUDENTIAL INSURANCE COMPA-
NY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 19, 2004—Decided June 27, 2005.

Before Judges SKILLMAN, COLLESTER and PARRILLO.

*George J. Weinroth,* argued the cause for appellant (*Mattleman, Weinroth & Miller,* attorneys; *Mr. Weinroth,* of counsel; *John C. Miller, III* and *William P. Rubley,* on the brief).

*Daniel J. Pomeroy,* argued the cause for respondent (*Mortenson and Pomeroy,* attorneys; *Mr. Pomeroy* and *Karen E. Heller,* on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

At issue is whether the 1998 amendment to New Jersey's deemer statute, *N.J.S.A.* 17:28-1.4, *L.* 1997, *c.* 436, § 1, limits an insurer's obligation to provide the full benefits mandated by New Jersey law to an out-of-state insured injured in a New Jersey auto accident, when the insurer is authorized to transact auto insurance business in this State. The motion judge ruled that the statute as amended does not extend personal injury protection (PIP) benefits to non-residents of New Jersey and, therefore, granted summary judgment to defendant-respondent, Prudential Insurance Company (Prudential). Plaintiff, Cooper Hospital University Medical Center (Cooper), appeals. We now reverse.

The facts are not in dispute. In the evening of January 29, 2002, Ralph Turchi Jr., a Pennsylvania resident, was a passenger in his own vehicle, driven by his nephew, when it collided with another vehicle that had crossed the highway median on I-76 in Gloucester City. Turchi sustained serious injuries and was treated at Cooper where he remained for several days before his death on February 2, 2002. During his stay at Cooper, decedent incurred medical expenses of $123,036.

Decedent's vehicle was insured by Prudential, which, pursuant to Pennsylvania law, provided minimum coverage that included $10,000 in medical, $5,000 in basic income loss, and $1,500 in funeral benefits. Prudential is authorized to transact automobile insurance business in New Jersey.

Cooper demanded from Prudential payment of $123,036 on the outstanding balance for services rendered to Turchi during his hospitalization. Prudential denied payment to Cooper on the basis that the PIP benefits provided under the insured's Pennsylvania automobile insurance policy had been exhausted. Thereafter, Cooper sued Prudential, claiming a right to payment under the deemer statute. Prudential answered and, following discovery, moved for summary judgment on the ground that the 1998 amendment to *N.J.S.A.* 17:28–1.4 limited its obligation to pay New Jersey—mandated PIP minimums to out-of-state residents. The motion judge agreed, granted summary judgment to Prudential, and dismissed Cooper's complaint.

■■■■ We begin our analysis by noting that "the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." *Sheeran v. Nationwide Mut. Ins. Co.*, 80 *N.J.* 548, 556, 404 *A.2d* 625 (1979) (quoting *Caminetti v. United States*, 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L. Ed.* 442, 452 (1917)). Interpretation of a statute commences with an analysis of the language of the statute, *Higgins v. Pascack Valley Hosp.*, 158 *N.J.* 404, 418, 730 *A.2d* 327 (1999), which "ordinarily" governs if the plain language is unambiguous and clear. *State v. Kittrell*, 145 *N.J.* 112, 122–23, 678 *A.2d* 209 (1996); *Board of Educ. of Tp. of Neptune v. Neptune Tp. Educ. Ass'n*, 144 *N.J.* 16, 25, 675 *A.2d* 611 (1996). However, when the meaning of a word used in a statute is not explicit, or where the literal application of the word suggests more than one arguable meaning, the court's function is to ascertain the Legislature's purpose in enacting the statute. *Burns v. Belafsky*, 166 *N.J.* 466, 473, 766 *A.2d* 1095 (2001). To that end, "words used may be expanded or limited according to

the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." *New Capitol Bar & Grill Corp. v. Div. of Employment Sec.*, 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957) (quoting *Alexander v. New Jersey Power & Light Co.*, 21 *N.J.* 373, 378, 122 *A.*2d 339 (1956)).

Legislative intent may be determined by analyzing "legislative history, committee reports, and contemporaneous construction." *Burns v. Belafsky, supra,* 166 *N.J.* at 473, 766 *A.*2d 1095. It may also be derived from an overall understanding of the words utilized and their relationship to other related provisions. *State v. Afanador,* 134 *N.J.* 162, 172, 631 *A.*2d 946 (1993). "There is need to keep in view ... the structure of the statute, and the relation ... between its several parts." *Duparquet Huot & Moneuse Co. v. Evans,* 297 *U.S.* 216, 218, 56 *S.Ct.* 412, 413, 80 *L.Ed.* 591 (1936). In other words, the meaning of a word or series of words may be ascertained by reference to a neighboring set of words or similar provisions in the same statutory scheme. *State v. Mortimer,* 135 *N.J.* 517, 536, 641 *A.*2d 257 (1993), *cert. denied,* 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994). Our goal is to "try 'to make sense out of the legislation, so far as text and context may allow.'" *City of Clifton v. Zweir,* 36 *N.J.* 309, 322, 177 *A.*2d 545 (1962) (quoting Llewellyn, *The Common Law Tradition: Deciding Appeals* 529 (1960)).

Against this backdrop, we begin our statutory analysis. New Jersey's "deemer" statute was amended effective January 19, 1998 (1998 amendment). We recite the statute in full and underline the portions that were added by the 1998 amendment:

> Any *insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with,* an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the personal injury protection benefits coverage pursuant to section 4 of P.L. 1972, c. 70 (C.39:6A–4) or section 19 of P.L. 1983, c. 362 (C.17:28–1.3) for any New Jersey resident who is not required to maintain personal injury protection coverage

*pursuant to section 4 of P.L. 1972, c. 70 (C.39:6A–4) or section 4 of P.L. 1998, c. 21 (C.39:6A–3.1) and who is not otherwise eligible for such benefits, whenever the automobile or motor vehicle insured under the policy is used or operated in this State.*

*In addition, any* insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting *automobile or motor vehicle* insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of subsection a. of section 1 of P.L. 1972, c. 197 (C.39:6B–1) or section 3 of P.L. 1972, c. 70 (C.39:6A–3), the uninsured motorist insurance requirements of subsection a. of section 2 of P.L. 1968, c. 385 (C.17:28–1.1), and personal injury protection benefits coverage pursuant to section 4 of P.L. 1972, c. 70 (C.39:6A–4) or of section 19 of P.L. 1983, c. 362 (C.17:28–1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

[*N.J.S.A.* 17:28–1.4.]

Generally speaking, the deemer statute effectively mandates that out-of-state policies within its ambit are automatically construed as New Jersey policies when the covered vehicle is involved in a New Jersey accident. The statute thus fixes the amount and scope of coverage an out-of-state policy must provide in the event of an accident while a covered vehicle is used or operated here. The coverages that New Jersey policies are required to provide are: (1) liability insurance in the minimum amounts of $15,000 per person and $30,000 per accident for bodily injury and $5,000 per accident in property damage as set forth in *N.J.S.A.* 39:6A–3 and 39:6B–1; (2) uninsured motorist coverage in the same minimum amounts, as required by *N.J.S.A.* 17:28–1.1(a); and (3) minimum "standard policy" PIP benefits, as required by *N.J.S.A.* 39:6A–4.

Prior to its amendment in 1998, the deemer statute applied to out-of-state insurance companies that were authorized to engage in the auto insurance business in New Jersey, and included an "affiliate" clause that extended the statute's application to insurance companies that were "controlling or controlled by, or under common control by, or with, an insurer authorized to transact or, transacting insurance business" in New Jersey. *N.J.S.A.* 17:28–1.4, *L.* 1988, *c.* 119, § 1. In other words, the pre-amendment deemer statute applied both to insurance companies authorized to

transact auto insurance business in New Jersey and to insurance companies not so authorized, but who controlled or were controlled by an insurance company that was conducting *general* insurance business in New Jersey. In such cases, the qualifying insurance company was required to provide PIP, liability, and UM coverage to non-New Jersey residents covered by the policy as well as to New Jersey residents. Thus, "[u]nder the original statute, non-New Jersey residents could collect New Jersey PIP benefits [and other mandated New Jersey coverage] from any insurer that was included within the deemer statute." *Gov't Employees Ins. Co. v. Allstate Ins. Co.*, 358 *N.J.Super.* 555, 566, 818 *A.*2d 474 (App.Div.2003) (*GEICO* ); *see also Adams v. Keystone Ins. Co.*, 264 *N.J.Super.* 367, 371, 624 *A.*2d 1008 (App.Div. 1993) (Delaware resident injured in New Jersey entitled to recover PIP benefits, where insurer transacted business in New Jersey). Indeed, Prudential has no dispute with this interpretation of the pre-amendment statute.

The 1998 amendment effected a change in the "affiliate" clause by creating an entirely new section requiring only PIP benefits coverage and then only for New Jersey residents if "the controlling or affiliated insurer is not transacting automobile or motor vehicle insurance business in New Jersey." *N.J.S.A.* 17:28–1.4, *L.* 1997, *c.* 436, § 1. In contrast, the original text followed the new section and was left virtually intact save for the addition of the words "automobile or motor vehicle," which modify and, therefore, limit the type of affiliated insurance businesses with the broader obligation to provide New Jersey insurance benefit coverages to both in-state and out-of-state residents in their out-of-state policies. Thus, by adding the amendment to the original text, the Legislature created two classifications:

> The amendment, included within the underlined first sentence ... requires the controlling or affiliated insurer to be authorized to transact any insurance business in this State, not necessarily motor vehicle or automobile business. The original portion of the statute, the second sentence ... requires that the controlling or affiliated insurer be authorized to transact not any insurance business, but motor vehicle or automobile insurance business in this State.
>
> [*GEICO, supra,* 358 *N.J.Super.* at 564–65, 818 *A.*2d 474.]

The statutory distinction is thus drawn between controlling or affiliated insurers who are authorized to transact any "insurance business in this State" and those that are authorized to transact "automobile or motor vehicle insurance business in this State." "Only the latter insurers must provide in out-of-state policies liability, uninsured motorist, and PIP coverages comparable to those which are mandatory in New Jersey issued policies[ ]" for both in-state and non-State residents. *GEICO, supra,* 358 *N.J.Super.* at 565–66, 818 *A.*2d 474. This dichotomy between two types of affiliated insurers—those insurers required to provide PIP benefits to some New Jersey residents only and insurers who must provide PIP coverage to protect New Jersey and non-New Jersey residents—is purposeful. "The amendment clearly was designed to lessen the burden on those out-of-state insurance companies which did not conduct auto insurance business in New Jersey and whose New Jersey affiliates also did not conduct auto insurance business." Craig & Pomeroy, *New Jersey Auto Insurance Law,* Comment 1:2–11 (2005). Conversely, the amendment did not effect a change in the coverage required of either out-of-state companies authorized to conduct auto insurance business in New Jersey or out-of-state companies affiliated with companies writing auto insurance in New Jersey.

We find the meaning of the 1998 amendment to be evident. Indeed, all at least agree that when the policy is sold in any other state or in Canada by an insurer that is not itself authorized to sell auto or motor vehicle insurance in New Jersey but that is legally affiliated with a company that is authorized to write non-motor-vehicle-related insurance here, that policy is deemed to include PIP coverage for New Jersey residents who neither have nor are required to have PIP coverage. The confusion over Prudential's coverage in this case—as an insurer authorized to transact auto insurance business in this State—stems from the inclusion of this class of insurer in the amendatory text (*i.e.,* the first sentence) as well as in the original version retained virtually intact (*i.e.,* the second sentence). Prudential thus argues that its inclusion in the

amendatory text limits its obligation to that stated therein, namely to provide only PIP benefits and only to injured claimants with New Jersey resident status. We reject this argument as fundamentally unsound.

Prudential's construction overlooks the critical fact that the category of insurer to which it belongs is also subject to the original portion of the statute with its broader obligations. Clearly, if Prudential qualified *only* under the amended section, it would be entitled to the relief it sought below because, pursuant to that section, PIP benefits are only provided "for any New Jersey resident who is not ... otherwise eligible for such benefits." However, Prudential indisputably falls within the second portion of the statute, which constitutes the deemer statute as it existed before the amendment, and which is connected to the amended version by the phrase "in addition." The use of such conjunctive language as a segue into the original segment clearly indicates that qualifying insurers, such as Prudential, are subject to the broader obligations set forth therein. As we noted in dicta in *GEICO, supra*:

> If the out-of-state carrier is authorized to transact automobile insurance business in this State then it would be subject to the amendment and the original portion of the statute. This insurance company would have to provide the more extensive coverages that were required under the statute before the amendment.
> [358 *N.J.Super.* at 568, 818 A.2d 474.]

Nothing in *Santeez v. State Farm Ins. Co.*, 338 *N.J.Super.* 166, 768 A.2d 269 (Law Div.2000), on which Prudential relies, is to the contrary. Significantly, that case did not involve a non-resident injured claimant as here, but rather a *State* resident who, when operating his vehicle (bicycle) in New Jersey, did not maintain the requisite PIP coverage mandated by *N.J.S.A.* 39:6A-4, and, therefore, did not qualify for PIP benefits under the amended deemer statute. 338 *N.J.Super.* at 174–75, 768 A.2d 269.

Nor does anything in the legislative history detract from the plain meaning of the statute as discerned from its language and structure. The deemer statute, as originally designed, was to "lower premiums, reduce litigation and *make PIP benefits avail-*

*able to all."  GEICO, supra,* 358 *N.J.Super.* at 561, 818 *A.*2d 474 (emphasis added).   Specifically, the Legislature wanted "New Jersey-authorized insurance companies [to] provide to their out-of-state insured traveling in New Jersey the same protections required of in-state insured vehicles."  *Id.* at 561, 566, 818 *A.*2d 474; *see Martin v. Home Ins. Co.,* 141 *N.J.* 279, 282, 661 *A.*2d 808 (1995).  This objective was carried forward in the 1998 amendment which retained almost entirely intact the original version. Certainly, if, as Prudential suggests, the Legislature had intended such a significant limitation on the coverage afforded in the original text, it would have expressly so stated, rather than continuing its language practically in toto.  As we noted in *GEICO, supra:*

> We can discern no Legislative intent to modify the deemer statute in any way other than by establishing the two classifications of insurance companies and requiring each classification to offer different coverages.
>
> [358 *N.J.Super.* at 568, 818 *A.*2d 474.]

Rather than the across-the-board limitation suggested by Prudential, the 1998 amendment sought to continue to "hang the net" for those eligible for PIP benefits "as widely as possible."  *Id.* at 571, 818 *A.*2d 474.

On this score, the legislative statement explaining the 1998 amendment refers explicitly to the addition of a separate classification to include controlling or affiliated insurers that do not conduct auto insurance business in New Jersey, but implicitly are authorized to transact some other type of insurance business in the State.  *L.* 1997, *c.* 436, § 1. As to them, the statement further explains that the bill requires they include PIP coverage in their out-of-state policies to those otherwise uninsured *New Jersey* residents who are not required themselves to maintain PIP coverage.  *Ibid.* Thus, the amendment addresses "only the controlling or affiliated insurer which now is subject to different requirements depending on its New Jersey authorization."  *GEICO, supra,* 358 *N.J.Super.* at 568, 818 *A.*2d 474.  And the only coverage limitation applies to out-of-state insurance companies that do not conduct auto business in New Jersey and whose New Jersey affiliates also

do not conduct auto insurance business. The legislative statement refers to no other limitation and we discern none from the legislative record. Nothing in the explanatory statement suggests that the original pre-amendment version of the legislation should be read in any different light to reduce the coverage clearly provided therein.

Prudential's contrary construction finds no support in either case law or the legislative history. Quite the opposite, we conclude from the plain language, structure, history, and purpose of the legislation that the amendatory text did not effect a change in the coverage of companies that are either, like Prudential, authorized to transact auto insurance business in New Jersey or affiliated with companies writing auto insurance in New Jersey. They continue, as before, to be required to provide PIP, liability, and UM coverage to non-New Jersey residents covered by the policy as well as to New Jersey residents.

Reversed and remanded.