SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Guerline Felix v. Brian V. Richards (A-27-18) (081799)**

**Argued September 24, 2019 -- Decided February 26, 2020**

**LaVECCHIA, J., writing for the Court.**

Under New Jersey's so-called "deemer" statute, N.J.S.A. 17:28-1.4, out-of-state motor vehicle insurance policies have been deemed to guarantee the same $15,000 per person/$30,000 per accident bodily injury (BI) liability insurance coverage required under New Jersey's standard policy. Since the enactment of the deemer statute, the Legislature has created two alternate forms of lesser insurance coverage -- coverage that does not automatically include BI: the basic policy and the special policy, both of which satisfy New Jersey's compulsory insurance requirements. In this case, the Court considers whether the later enactment of the basic policy has fundamentally altered the requirements of the deemer statute, such that the amount deemed to be covered by out-of-state policies has been reduced from previously required amounts -- namely $15,000/$30,000 in compulsory minimum BI liability -- to the level of the basic policy, which would mean that BI coverage would no longer be required. The Court also considers the argument that a contrary reading would create an equal protection violation.

Guerline Felix's vehicle collided with Brian Richards' vehicle in New Jersey. Richards was insured under a New Jersey automobile insurance policy issued by AAA Mid-Atlantic Insurance Company (AAA). The policy provided BI liability coverage, as well as uninsured and underinsured motorist (UM/UIM) coverage. Felix was insured by the Government Employee Insurance Company (GEICO) under a policy written in Florida. That policy provided up to $10,000 in property liability and personal injury protection (PIP) benefits, but it did not provide any BI liability.

Felix sued Richards for personal injuries, and, in a separate action, Richards sued Felix and AAA for personal injuries. AAA then filed a third-party complaint against GEICO, claiming that GEICO's policy was automatically deemed to include $15,000/$30,000 in BI coverage and that payment would eliminate the claim for UM/UIM coverage by AAA. The motion court determined that the deemer statute applied to GEICO's policy, rejecting the argument that the statute creates a carve-out for BI coverage based upon the basic policy, as well as GEICO's constitutional challenge. The Appellate Division affirmed, and the Court granted the petition for certification filed by GEICO. 236 N.J. 117 (2018).

1

**HELD:** The deemer statute does not incorporate by reference the basic policy's BI level for insurers, like GEICO, to which the second sentence of N.J.S.A. 17:28-1.4 applies. From the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000. As to the equal protection claim, New Jersey insureds are the ones who have a choice to purchase less than the presumptive minimum BI amount. The obligation of in-state insurers to offer and provide that minimum is the same as the obligation imposed under the deemer statute's second sentence on authorized insurers writing an out-of-state policy. The equal protection claim therefore falls flat.

1. The deemer statute, N.J.S.A. 17:28-1.4, achieved its present form in 1998, when the Legislature added in the first sentence an express reference to N.J.S.A. 39:6A-3.1, which sets forth requirements for a basic policy. In the second sentence of the deemer statute, the Legislature inserted the words "subsection a" before the citation to N.J.S.A. 39:6B-1; N.J.S.A. 39:6B-1(a) contains the compulsory requirements for BI liability for motor vehicles. The Legislature did not add any mention of the basic policy or its lack of any BI required coverage to the second sentence, which GEICO agrees covers the category of insurer into which it falls. Context is important. The second sentence of the deemer statute employs words that convey a presumed requirement of some minimum BI liability coverage: "shall . . . satisfy at least." Moreover, the legislative insertion of "subsection a." must be regarded as intentional and meaningful to the Legislature. The plain language leads to one clear conclusion. The basic policy was added as a standard for insurers covered by the deemer statute's first sentence, but the basic policy's BI limits do not apply to insurers governed by the deemer statute's second sentence. (pp. 13-17)

2. The legislative history of the deemer statute aligns with the result compelled by its plain language. That history reveals an intent to lessen the regulatory burden only on insurers who have the most attenuated connection to motor vehicle insurance business in New Jersey -- those governed by the first sentence of the deemer statute. For insurers governed by the statute's second sentence, like GEICO, the Legislature has never lessened their obligation to provide, or be deemed as providing, compulsory minimum liability coverage. The Legislature reaffirmed its commitment to BI coverage in the second sentence by its additional reference to subsection a. of N.J.S.A. 39:6B-1. And the second sentence's reference to N.J.S.A. 39:6A-3 does not establish that the Legislature implicitly intended to convert the entire second sentence's BI requirements to the equivalent of a basic policy. First, that reference was meant to ensure that the statute encompasses both automobiles and motor vehicles. Further, it defies logic and sensibility that by retaining the reference to N.J.S.A. 39:6A-3, the Legislature intended to make so large scale a change to the deemer statute's second sentence when, at the same time, the Legislature knew how to and did incorporate an explicit reference to the basic policy in the first sentence. And, last, if the compulsory insurance obligations of insurers has dropped to the basic policy's BI floor, it would render the "shall . . . satisfy at least" language of the deemer statute's second sentence nonsensical. The fact that the Legislature now permits New Jersey insureds to accept zero BI coverage does not alter

2

what remains the compulsory minimum BI liability coverage amounts that insurers writing in New Jersey must provide. That principle was recognized shortly after the 1998 changes, and the Legislature has never corrected that interpretation. (pp. 17-23)

3. The Court applies the rational basis test to GEICO's equal protection challenge to this economic legislation. Comparing a New Jersey authorized insurer that writes in New Jersey to another New Jersey authorized insurer that writes in New Jersey and also writes in other states, the equal protection claim falls flat. The insurers are treated the same with respect to the duty to provide minimum compulsory insurance coverage limits. There is no discriminatory classification. New Jersey insureds are the ones who have a choice to purchase less than the presumptive minimum amount that must be offered by all insurers authorized to transact automobile insurance business in this State. The obligation of in-state insurers to offer and provide that minimum is the same as the obligation imposed under the deemer statute's second sentence on authorized insurers writing an out-of-state policy. For those out-of-state policies, the Legislature has made the policy choice to stick with the compulsory minimum limits. That choice -- to be more protective of the Unsatisfied Claim and Judgment Fund from claims caused by out-of-state insured tortfeasors who may have no access to BI insurance coverage than from a claim caused by a New Jersey tortfeasor having only a basic policy -- is not an irrational policy choice. (pp. 24-28)

4. Any argument that relies on a claimed disparity for the out-of-state insured is misplaced in this appeal because there is no insured to advance such a claim and because a proper record has not been presented. The Court notes, however, that in the past, the legislative decision to treat in-state and out-of-state insureds differently in terms of the scope of their choice of coverage has not been deemed irrational. (pp. 28-30)

**The judgment of the Appellate Division is AFFIRMED.**

**JUSTICE FERNANDEZ-VINA, dissenting,** expresses the view that, under the deemer statute, an insurer's out-of-state policies must include coverage to satisfy at least the liability insurance requirements of N.J.S.A. 39:6B-1(a) or N.J.S.A. 39:6A-3 and that, because both statutes can be satisfied by policies that carry no BI coverage, GEICO fulfilled its duty. Requiring GEICO to reform its policy would constitute a violation of the Equal Protection Clause of the Fourteenth Amendment, Justice Fernandez-Vina notes, because New Jersey insureds are not required to have BI coverage themselves and requiring out-of-state insurers to provide more coverage when their insureds enter the state distinguishes unconstitutionally between in-state and out-of-state drivers.

**CHIEF JUSTICE RABNER and JUSTICE ALBIN join in JUSTICE LaVECCHIA's opinion. JUSTICE FERNANDEZ-VINA filed a dissent, in which JUSTICE SOLOMON joins. JUSTICES PATTERSON and TIMPONE did not participate.**

SUPREME COURT OF NEW JERSEY

A-27 September Term 2018

081799

Guerline Felix,

Plaintiff,

v.

Brian V. Richards,

Defendant.

Brian V. Richards and Kassandria Richards,
His Wife Per Quod,

Plaintiffs,

v.

Guerline Felix, Mid-Atlantic
Insurance Company of New Jersey,

Defendants,

and

AAA Mid-Atlantic Insurance Company,

Third-Party Plaintiff-Respondent,

v.

GEICO Indemnity Company,

Third-Party Defendant-Appellant.

1

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| September 24, 2019 | February 26, 2020 |

Eric G. Siegel argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Michael J. Marone and Richard J. Williams, Jr., of counsel and on the briefs, and Eric G. Siegel, on the briefs).

Sanford D. Kaplan argued the cause for respondent (Muscio, Kaplan & Helfrich, attorneys; Sanford D. Kaplan, on the brief).

Eric S. Poe argued the cause for amicus curiae Citizens United Reciprocal Exchange (Eric S. Poe, attorneys; Eric S. Poe, of counsel and on the brief, and Abbey True Harris, on the brief).

John E. Molinari argued the cause for amicus curiae New Jersey Association for Justice (Blume Forte Fried Zerres & Molinari, attorneys; John E. Molinari, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Automobile insurance is compulsory in New Jersey. All owners of automobiles registered or principally garaged in New Jersey are required to insure their vehicles for minimum amounts of liability insurance coverage and personal injury protection. See Caviglia v. Royal Tours of Am., 178 N.J. 460 (2004) (generally discussing New Jersey's compulsory insurance framework).

2

Insurers authorized to do business in New Jersey and writing policies for such vehicles must comply with compulsory insurance coverage limits. See N.J.S.A. 39:6A-3, -4. The Legislature established a standard policy setting the minimal compulsory coverages that an insurer must offer and provide to insureds in New Jersey. Under the standard policy, the insurer must provide the insured with, in pertinent part, at least $15,000 per person/$30,000 per accident in bodily injury liability insurance coverage (BI).

No insurer is forced to write in New Jersey, but for the privilege of doing so, an insurer is bound by the laws in this state. One demand placed on insurers that choose to do insurance business in New Jersey concerns the policies written by such insurers for insureds in other states. That demand is effectuated through New Jersey's so-called "deemer" statute, N.J.S.A. 17:28-1.4, which lies at the heart of this appeal. The deemer statute's purpose, generally stated, is to ensure that New Jersey residents injured as a result of an accident with an out-of-state vehicle will have recourse to policies of insurance that are at least as broad as the presumptive minimal limits of a New Jersey insurance policy. See generally Craig & Pomeroy, N.J. Auto Insurance Law § 3.3 (2019). In other words, regardless of the actual terms of out-of-state policies, those policies have been deemed to guarantee the same $15,000 per person/$30,000 per accident BI that New Jersey policies have had to offer.

3

Since the enactment of the deemer statute, the Legislature has created two alternate forms of lesser insurance coverage -- coverage that does not automatically include BI. One is the basic policy, created in 1998 as part of the Automobile Insurance Cost Reduction Act (AICRA), L. 1998, cc. 21 and 22, which carries no BI unless an optional $10,000 amount is selected. See N.J.S.A. 39:6A-3.1. The other is the special policy, created in 2003, which has an income eligibility requirement for participation and no optional BI. See N.J.S.A. 39:6A-3.3. Eligible insureds may satisfy New Jersey's insurance law requirements by purchasing basic or special policies.

In this case, an insurer argues that the later enactment of the basic policy has fundamentally altered the requirements of the deemer statute. Because the basic policy carries no BI requirement, the argument goes, the amount deemed to be covered by out-of-state policies has been reduced from previously required amounts -- namely $15,000/$30,000 in compulsory minimum BI liability -- to the level of the basic policy. If correct in its argument, the insurer would have no obligation to provide any BI because the basic policy does not contain any minimally required BI.

The trial court rejected that argument and the Appellate Division affirmed. We agree with those determinations and affirm the Appellate Division judgment in all respects.

4

The plain language of the deemer statute does not support the interpretation being advanced; in fact, amendments to the deemer statute reveal a distinct legislative effort to avoid that result. The Legislature knew how to, and did elsewhere, make an explicit reference to basic policy standards. It did not do so here for BI, and importing the basic policy's requirement into the deemer statute would subvert the Legislature's carefully crafted insurance scheme.

The insurer's fallback claim of an equal protection violation is equally unavailing. Every insurer that writes in New Jersey accepts the law of New Jersey. And all such insurers are treated equally under our law's obligation to provide the minimal amount of BI coverage that our compulsory insurance law requires. Through the deemer statute, in-state insurers writing policies in New Jersey and insurers that write in New Jersey and in other states must <u>both</u> offer insureds the minimum compulsory level of BI liability coverage of $15,000/$30,000 per person/per accident.

The fact that the Legislature now gives New Jersey resident insureds a choice to purchase a lesser amount of liability coverage to drive lawfully on the roadways of this state does not alter the compulsory obligation of both categories of insurers to offer and provide the same default minimum level of coverage. The insurers are treated uniformly. From the perspective of an

5

insurer, this appeal presents no viable equal protection violation caused by the deemer statute.

We also reject any attempt by the insurer to assert an equal protection claim from the perspective of the insured. That said, we do note that, as a result of application of our deemer statute in this case, the out-of-state insured is receiving a benefit: with respect to this accident that took place in New Jersey, the insured is receiving more liability protection than she would have if the accident occurred in Florida where her policy was written.

But there is no insured advancing a claim here. Hence, any discussion about the statute's impact on an insured is misplaced and speculative. Not only do we not have a proper party advancing an equal protection claim from an insured's position, we have no record for an insured's claim. We could only speculate about what insureds are told in other states about their options regarding BI liability coverage and whether there is any rating impact that would be discernible and significant as a result of the operation of the deemer statute as construed. We do not decide cases based on speculation.

In short, there is no actionable equal protection claim here, and there is thus no constitutional basis to depart from the result reached by a plain-language interpretation of the statutory scheme in question.

# I.

This appeal involves a pure question of law. The facts aid primarily in understanding the relationship of the parties. The individuals involved in the accident that led to the underlying lawsuit have settled. The party in interest in this appeal is the Government Employee Insurance Company (GEICO) -- an insurer that writes automobile insurance policies in New Jersey and in other states -- which seeks to avoid operation of the deemer statute to a policy it wrote for an insured in Florida.

In September 2013, Guerline Felix's vehicle collided with Brian Richards' vehicle in Newark, New Jersey. At the time, Richards was insured under a New Jersey automobile insurance policy issued by AAA Mid-Atlantic Insurance Company (AAA). The policy provided BI liability coverage, as well as uninsured and underinsured motorist (UM/UIM) coverage in the amount of $15,000 per person and $30,000 per accident. Felix was insured by GEICO under a policy written in Florida. That policy provided up to $10,000 in property liability and personal injury protection (PIP) benefits, but it did not provide any BI liability.

Felix sued Richards for personal injuries, and, in a separate action, Richards sued Felix and AAA for personal injuries. GEICO declined to defend Felix in the suit filed by Richards because its policy did not provide BI

coverage. AAA then filed a third-party complaint against GEICO. AAA claimed that it had no obligation to provide UM or UIM coverage to Richards because, pursuant to the deemer statute, GEICO's policy was automatically deemed to include $15,000/$30,000 in BI coverage and that payment would eliminate the claim for UM/UIM coverage by AAA.

In the Law Division, the matter proceeded on motions for summary judgment filed by AAA and GEICO. The motion court determined that the deemer statute applied to GEICO's policy, rejecting the argument that the statute creates a carve-out for BI coverage in this circumstance based upon the BI standard for the basic policy in New Jersey. The court held that GEICO was "required to conform to the statutorily mandated minimum of $15,000 per person, $30,000 per accident in [BI] coverage" and, further, granted AAA's summary judgment motion, concluding that because the deemer statute applied, AAA's "UM/UIM coverage . . . is equal to the [BI] liability coverage under the reformed GEICO policy and, accordingly, plaintiff is not entitled to receive the UM/UIM [coverage] from AAA." The motion court also rejected GEICO's constitutional challenge, citing prior law.

The Appellate Division affirmed. It rejected GEICO's argument that, by enacting AICRA and, among other things, creating for New Jersey insureds the option to select a basic policy option with no BI coverage, the Legislature

8

intended to modify the deemer statute "to require no BI coverage for automobiles to which the statute would otherwise apply." After examination of the statute's plain language, as well as a historical review of legislative revisions to the deemer statute, the appellate court concluded that "[s]hould the Legislature have intended a change in the [d]eemer statute, as argued by GEICO, it could have said so expressly." The court held that "the plain language of the [d]eemer statute requires GECIO's policy here to be reformed to include BI coverage in the amount of $15,000/$30,000." The court also found meritless GEICO's equal protection challenge, explaining that "all insurers writing policies in New Jersey are treated uniformly; it's the consumer who has the option to purchase more affordable coverage."

We granted the petition for certification filed by GEICO. 236 N.J. 117 (2018). We also granted amicus curiae status to the New Jersey Association for Justice (NJAJ) and to Citizens United Reciprocal Exchange (CURE).

II.

According to GEICO, the deemer statute's second sentence, which GEICO agrees covers the category of insurer into which it falls, incorporates by reference the BI requirement, or more accurately the lack of any BI coverage, applicable in the basic policy. GEICO relies on the sentence's language that requires such insurers to include in the out-of-state policy

9

"coverage to satisfy at least the liability insurance requirements of [N.J.S.A. 39:6B-1(a)] or [N.J.S.A. 39:6A-3]."  GEICO then points to N.J.S.A. 39:6A-3, which now states that, "[e]xcept as provided by [N.J.S.A. 39:6A-3.1]," (the statute authorizing creation of a basic policy), the compulsory $15,000/$30,000 liability limits apply.  According to GEICO, the excepting language of N.J.S.A. 39:6A-3 has been incorporated by reference into the deemer statute's requirements, and, thus, the basic policy now eliminates BI requirements from the deemer statute's list of required coverages.  GEICO concludes that its out-of-state policy, which like the basic policy has no BI coverage, satisfies the liability insurance requirement of N.J.S.A. 39:6A-3 and therefore satisfies the deemer statute.

CURE aligns itself with GEICO's position that the Florida policy should not be deemed to require BI coverage of $15,000/$30,000.  CURE urges us to view the basic policy as the new general standard for compulsory liability insurance.

AAA disputes that the deemer statute incorporates by reference the basic policy.  It notes that the second sentence of the deemer statute does not refer to the basic policy; rather, it identifies the two statutes that establish the compulsory minimum BI coverage required to be provided by insurers to insureds under New Jersey's standard policy of insurance:  N.J.S.A. 39:6B-

10

1(a) and 39:6A-3. Thus, AAA maintains that, when the deemer statute applies, the default coverage required of out-of-state policies includes BI coverage of $15,000/$30,000.

NJAJ offers two arguments in support of AAA's position. First, it points to the first sentence, where "the legislature demonstrates a clear understanding of the existence of the 'basic' policy" and expressly included it, while "[i]n the second sentence dealing with liability . . . it did not." Second, with respect to the second sentence pertinent here, NJAJ observes that the deemer statute requires insurers "to satisfy at least the liability insurance requirements of [N.J.S.A. 39:6B-1(a)] or [N.J.S.A. 39:6A-3]." NJAJ notes that N.J.S.A. 39:6B-1(a) refers to "motor vehicles" and N.J.S.A. 39:6A-3 refers to automobiles. It explains that the Legislature has always cited both statutes to clearly establish that the deemer statute reaches both passenger automobiles and other types of motor vehicles and argues that the reference to the two statutes does not suggest that there are two different and conflicting standards. According to NJAJ, that is so because the Legislature particularly underscored the BI requirement by adding the reference to subsection a. for the motor vehicle statute citation, which contains no reference to the basic policy, unlike section b. of that statute.

11

In addition to textual arguments, GEICO, AAA, and the amici include arguments on why their interpretation advances their perception of the legislative intent underlying the deemer statute.

## III.

With a question of statutory construction, we begin with the language of the statute as the surest indicator of legislative intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language."). If the language admits of only one clear interpretation, the interpretative task can come to an end and we enforce that meaning. State v. Reiner, 180 N.J. 307, 311 (2004).

The parties agree it is the second sentence of the first paragraph of the deemer statute that applies in this matter because GEICO, an insurer that writes automobile policies in New Jersey, wrote the policy at issue for its out-of-state insured in Florida. What the parties dispute is whether an insurer has met its duty under that sentence when the out-of-state policy has no BI coverage. We apply traditional principles of statutory construction to that key text.

Here, a plain language construction points compellingly in favor of concluding that the basic policy's BI level was not incorporated by reference into the second sentence of the deemer statute.

First enacted in 1985, the deemer statute achieved its present form when it was amended in 1998 through the enactment of AICRA. L. 1998, cc. 21, 22. Two key changes accomplished by that amendment warrant particular attention. In the first sentence, the Legislature added the express reference to N.J.S.A. 39:6A-3.1 and its requirements for a basic policy. That first sentence now reads:

> Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the personal injury protection benefits coverage pursuant to section 4 of L. 1972, c. 70 ([N.J.S.A.] 39:6A-4) or section 19 of L. 1983, c. 362 ([N.J.S.A.] 17:28-1.3) for any New Jersey resident who is not required to maintain personal injury protection coverage pursuant to section 4 of L. 1972, c. 70 ([N.J.S.A.] 39:6A-4) or section 4 of L. 1998, c. 21 ([N.J.S.A.] 39:6A-3.1) and who is not otherwise eligible for such benefits, whenever the

automobile or motor vehicle insured under the policy is used or operated in this State.

[N.J.S.A. 17:28-1.4.]

In the second sentence of the deemer statute, the Legislature inserted the words "subsection a" before "section 1 of L. 1972, c. 197 ([N.J.S.A.] 39:6B-1)," which contains the compulsory requirements for BI liability for motor vehicles. That sentence now states:

> In addition, any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of subsection a. of section 1 of L. 1972, c. 197 ([N.J.S.A.] 39:6B-1) or section 3 of L. 1972, c. 70 ([N.J.S.A.] 39:6A-3), the uninsured motorist insurance requirements of subsection a. of section 2 of L. 1968, c. 385 ([N.J.S.A.] 17:28-1.1), and personal injury protection benefits coverage pursuant to section 4 of L. 1972, c. 70 ([N.J.S.A.]39:6A-4) or of section 19 of L. 1983, c. 362 ([N.J.S.A.] 17:28-1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

[N.J.S.A. 17:28-1.4.]

14

The AICRA amendment to the first sentence -- added at the same time as the creation of the basic policy -- made express reference to the basic policy and thus clearly made that category of out-of-state insurers subject to the basic policy requirements for PIP coverage. That legislative change to the first sentence also implicitly acknowledged that there was no BI liability obligation imposed on those insurers; there is no mention of any liability requirement. Thus, in clear directory language, the first sentence further reduced the obligation imposed on that category of insurer by setting it to the basic policy's PIP coverage. Where the Legislature meant to incorporate a basic policy level of required coverage, it knew how to do so and did it.

The amendments to the second sentence did nothing similar for the category of insurer it covers. In the second sentence, the Legislature did not add any mention of the basic policy with its lack of any BI required coverage.

Context is important. The second sentence of the deemer statute employs words that convey a presumed requirement of some minimum BI liability coverage. In addressing insurers that write automobile insurance in New Jersey and that also write automobile insurance policies in other states or Canada, the legislation states that such insurers' out-of-state policies must "satisfy at least the liability requirements of subsection a. of section 1 of L. 1972, c. 197 ([N.J.S.A.] 39:6B-1) [(concerning motor vehicles)] or section 3 of

15

L. 1972, c. 70 ([N.J.S.A.] 39:6A-3) [(concerning automobiles)]." N.J.S.A. 17:28-1.4. Read plainly, the Legislature is imposing a required amount of liability insurance by using the words, "shall . . . satisfy at least."

As we said in Jersey Central Power & Light Co. v. Melcar Utility Co., we apply "the bedrock assumption that the Legislature did not use 'any unnecessary or meaningless language,' so a court 'should try to give effect to every word of [a] statute . . . . [rather than] construe [a] statute to render part of it superfluous.'" 212 N.J. 576, 587 (2013) (first quoting Patel v. Motor Vehicle Comm'n, 200 N.J. 413, 418-19 (2009), then quoting Med. Soc'y of N.J. v. Dep't of Law & Pub. Safety, 120 N.J. 18, 26-27 (1990)). We thus presume that "every word" in the deemer statute, including its words requiring the minimal amount of liability coverage, "has meaning and is not mere surplusage." Cast Art Indus., LLC v. KPMG LLP, 209 N.J. 208, 222 (2012) (quoting In re Attorney Gen.'s Directive on Exit Polling: Media & Non-Partisan Pub. Interest Grps., 200 N.J. 283, 297-98 (2009)).

Moreover, in connection with its discussion of BI requirements for this category of insurers, the Legislature underscored the obligation in subsection a. of N.J.S.A. 39:6B-1, which refers to the $15,000/$30,000 compulsory BI coverage requirements. Subsection a. of N.J.S.A. 39:6B-1 contains no reference to the basic policy. Subsection b. of N.J.S.A. 39:6B-1 does. It

16

contains the reference to a basic policy as being acceptable if an insured chooses to go bare on BI coverage. The legislative insertion of the emphasizing words of "subsection a." -- not leaving the sentence as it was and allowing it to simply reference any or all subsections of N.J.S.A. 39:6B-1 -- must be regarded as intentional and meaningful to the Legislature. We cannot and will not assume that the Legislature meant something other than what it said, when it added a specific reference to the liability requirements of subsection a.

The plain language leads to one clear conclusion. The basic policy was added as a standard for insurers covered by the deemer statute's first sentence. The second sentence makes no mention whatsoever of the basic policy. It refers only to the standard policy's compulsory minimum insurance coverage requirements. The plain language controls, and it does not support the argument that the basic policy's BI limits apply to insurers governed by the deemer statute's second sentence.

B.

1.

To the extent that there is any doubt about the plain language conclusion reached, the outcome here also aligns with the legislative history of the deemer statute.

17

When originally enacted, the statute applied to insurers who sold policies providing automobile or motor vehicle coverage and who were either authorized to sell automobile or motor vehicle insurance in New Jersey or were legally affiliated with insurers authorized to sell insurance -- of any kind, whether automobile/motor vehicle insurance or not -- in New Jersey.  See Cooper Hosp. Univ. Med. Ctr. v. Prudential Ins. Co., 378 N.J. Super. 510, 515-16 (App. Div. 2005).  The law required those insurers to include in their out-of-state policies "coverage to satisfy at least the liability insurance requirements of [N.J.S.A. 39:6B-1] or [N.J.S.A. 39:6A-3]."  N.J.S.A. 17:28-1.4 (1985).  And, both of those statutes required BI coverage of at least $15,000/$30,000.  See N.J.S.A. 39:6B-1 (1985); N.J.S.A. 39:6A-3 (1985).

If any one of those insurers did not provide for the BI coverage of $15,000/$30,000 and an insured driver of that insurer was involved in an accident in New Jersey, the driver's policy would be deemed to have BI coverage "of not less than $15,000 on account of injury to, or death of, one person in any one accident" and "coverage of not less than $30,000 on account of injury to or death of more than one person in any one accident."  Whitaker v. DeVilla, 147 N.J. 341, 347-48 (1997) (describing pre-AICRA versions of N.J.S.A. 39:6B-1 and N.J.S.A. 39:6A-3).

18

Through a 1998 amendment, L. 1997, c. 436, § 1 (eff. Jan. 1, 1998), the Legislature lightened the regulatory burden on one category of insurer: affiliates of insurers who sell only non-motor vehicle and non-automobile insurance in New Jersey. See Cooper Hosp., 378 N.J. Super. at 517. The Legislature added language (creating a new, and currently the first, sentence of the deemer statute) establishing that this category of insurer must include in its out-of-state policies "only PIP benefits coverage and then only for New Jersey residents." Id. at 516.

Although that amendment limited the coverage that affiliates of insurers transacting only non-motor vehicle/automobile insurance needed to provide under the deemer statute, it was understood as not "effect[ing] a change in the coverage required of" the other two types of insurers to which the deemer statute applied: New Jersey authorized automobile/motor vehicle insurers and affiliates of such insurers. Cooper Hosp., 378 N.J. Super. at 516-17; see also Craig & Pomeroy, § 3.1 (acknowledging statutory distinction between categories of insurers). Those insurers continued to have a duty to include BI coverage of at least $15,000/$30,000 in their out-of-state policies, and if they failed to do so and one of their insured drivers was involved in an accident in New Jersey, that driver's policy would still be deemed to have BI coverage of $15,000/$30,000. Cooper Hosp., 378 N.J. Super. at 517.

19

Thus, the history of amendments reveals an intent to lessen the regulatory burden only on the first sentence's category of insurers who have the most attenuated connection to motor vehicle insurance business in New Jersey. For insurers governed by the second sentence, the Legislature has never lessened their obligation to provide, or be deemed as providing, compulsory minimum liability coverage. Even with the AICRA amendments, when the Legislature altered language to further relieve insurers under the first sentence of some requirements by expressly referencing PIP requirements under the basic policy's statutory commands, there was no similar, coincidental action by the Legislature with respect to the second sentence. Instead, the Legislature reaffirmed its commitment to BI coverage by its additional reference to subsection a. of N.J.S.A. 39:6B-1.

### 2.

That the second sentence also includes its longstanding reference to N.J.S.A. 39:6A-3 -- which contains a carve-out that allows a New Jersey insured the option to purchase less BI coverage -- does not establish that the Legislature implicitly intended to convert the entire second sentence's BI requirements to the equivalent of a basic policy.

First, we reject any suggestion that the Legislature meant to create two standards with respect to the terms of "automobile" and "motor vehicle." The

20

deemer statute's reference to N.J.S.A. 39:6A-3 was meant to ensure that the statute encompasses both automobiles and motor vehicles.[1]

Further, we do not believe the Legislature would have adopted, elliptically, two conflicting standards. That would be the case if we were to agree with GEICO that the change made for New Jersey insureds in N.J.S.A. 39:6A-3 is enough to lessen the deemer statute's BI liability requirements. Indeed, we conclude otherwise with respect to the deemer statute's requirements. The Legislature did not incorporate into the deemer statute the new clause added to N.J.S.A. 39:6A-3 -- "Except as provided in [N.J.S.A. 39:6A-3.1" -- which provided an exception to the mandatory BI coverage by way of the basic policy. Without a new cross-reference or some other amendment to the deemer statute in 1998, we read the deemer statute as originally drafted: it referenced the mandatory BI coverage provided for in N.J.S.A. 39:6A-3 at the time the deemer statute was enacted.

---

[1]  As NJAJ has argued, automobile is defined as "a private passenger automobile of a private passenger or station wagon type that is owned . . . and is neither used as a public or livery conveyance for passengers nor rented to others with a driver." N.J.S.A. 39:6A-2(a). Motor vehicle means "motor vehicle as defined in [N.J.S.A. 39:1-1], exclusive of an automobile as defined in subsection a. of this section." N.J.S.A. 39:6A-2(j). Thus, the Legislature recognized a distinction between automobiles and motor vehicles. For that reason, the deemer statute contains an "or" provision that incorporates N.J.S.A. 39:6B-1 (which covers motor vehicles) and N.J.S.A. 39:6A-3 (which covers automobiles).

21

GEICO's interpretation would inject ambiguity into the mandatory standard. It defies logic and sensibility that by retaining the reference to N.J.S.A. 39:6A-3, the Legislature intended to make so large scale a change to the deemer statute's second sentence when, at the same time, the Legislature knew how to and did incorporate an explicit reference to the basic policy in the first sentence.

And, last, if we were to accept that the compulsory insurance obligations of insurers has dropped to the basic policy's BI floor, it would render the mandatory language of the deemer statute's second sentence nonsensical. We are directed by the Legislature to presume that it intended that its words be given their ordinary and plain meaning. See N.J.S.A. 1:1-1. GEICO's interpretation conflicts with the must "satisfy at least" structure of the sentence, as well as the Legislature's added emphasis on the requirements of subsection a. of N.J.S.A. 39:6B-1. Ultimately, the Legislature's failure to include any reference to a basic policy in the deemer statute's second sentence is fatal to the argument advanced by GEICO.

The deemer statute speaks to what an insurer must provide. It has always been aligned to compulsory minimums that insurers must provide for insureds in New Jersey. The fact that the Legislature now permits New Jersey insureds to accept something less in BI coverage -- namely, zero BI coverage

22

-- does not alter what remains the compulsory minimum BI liability coverage amounts that insurers writing in New Jersey must provide. See N.J. Mfrs. Ins. Co. v. Varjabedian, 391 N.J. Super 253, 258 (App. Div. 2007) ("It is only the insured, not the insurer, who can elect to purchase the reduced coverage provided with the basic policy."). "From the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000." Ibid. That principle was recognized shortly after the AICRA changes, see Cooper Hosp., 378 N.J. Super. at 516, and the Legislature has never corrected that interpretation of the import of its AICRA alterations regarding minimum compulsory insurance to be offered by insurers in New Jersey.

As the Appellate Division stated, "[w]e have no reason to conclude that the Legislature meant to eliminate the $15,000/$30,000 BI coverage minimum just because it referred to the basic policy in one part of the statute that addresses affiliates where it did not include that reference in the second sentence, the original portion of the statute." We agree. The plain language of the statute leads to that conclusion.

IV.

A.

GEICO claims a federal equal protection violation as its fallback argument in its challenge to the deemer statute.

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protections of laws." U.S. Const. amend. XIV, § 2. A state is required to generally treat alike "all persons who are similarly situated." State v. Bianco, 103 N.J. 383, 394 (1986); see Greenberg v. Kimmelman, 99 N.J. 552, 564 (1985) (explaining how federal equal protection analysis employs different tiers of review when reviewing classifications that differentiate among persons).

Here we deal not with any fundamental right nor must we differentiate between a suspect or semi-suspect class, which require the stricter forms of review. See Greenberg, 99 N.J. at 564. This is economic legislation being challenged by an insurer subject to its requirements. In this circumstance, the rational basis test applies, in which "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Bianco, 103 N.J. at 394.

24

B.

At the outset, it bears noting that no insurer is forced to write in New Jersey. For the privilege of doing that, an insurer is bound by the law of New Jersey. Every automobile insurance company that writes in New Jersey accepts the same law and, thus, is treated the same.

In-state insurers that write auto policies in New Jersey and authorized insurers that write in New Jersey and that also write for out-of-state insureds must both offer their insureds the minimum compulsory level of BI liability coverage of $15,000/$30,000 per person/per accident. The fact that legislation now permits New Jersey resident insureds to choose to purchase a lesser amount of liability coverage, and still be considered lawfully insured, does not alter the obligation of either category of insurers to offer and provide the same default statutory minimum level of compulsory coverage. See Varjabedian, 391 N.J. Super at 258 (noting that AICRA's basic policy construct has not altered the obligations of the insurer because, "[f]rom the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000"). The choice to elect basic policy coverage belongs to the New Jersey insured, not to the insurer; the insurer remains bound to offer and must provide at least the minimum compulsory liability amounts

25

presumptively set by the Legislature, unless a New Jersey resident makes the basic policy election.

As the Appellate Division correctly observed, "all insurers writing policies in New Jersey are treated uniformly; it's the consumer who has the option to purchase more affordable coverage." We agree with that assessment.

Comparing a New Jersey authorized insurer that writes in New Jersey to another New Jersey authorized insurer that writes in New Jersey and also writes in other states, the equal protection claim falls flat. The insurers are treated the same with respect to the duty to provide minimum compulsory insurance coverage limits -- whether to resident insureds or to out-of-state insureds through policies written in other states. There is no discriminatory classification.

New Jersey insureds are the ones who have a choice to purchase less than the presumptive minimum amount that must be offered by all insurers authorized to transact automobile insurance business in this State. The obligation of in-state insurers to offer and provide that minimum is the same as the obligation imposed under the deemer statute's second sentence on authorized insurers writing an out-of-state policy. For those out-of-state policies, the Legislature has made the policy choice to stick with the

26

compulsory minimum limits.  We do not view that legislative choice as failing a rational basis test.

The deemer statute has long been recognized as having a rational purpose that advanced legitimate state interests.  The statute was enacted in 1985 "in response to a growing number of cases where New Jersey residents were injured in accidents caused by out-of-state drivers whose insurance coverage was less than New Jersey's statutory requirements."  Gov't Emps. Ins. Co. v. Allstate Ins. Co., 358 N.J. Super. 555, 560 (2003) (internal quotation marks omitted) (quoting Craig & Pomeroy, § 1:2-6).  In imposing on the out-of-state insurance writer the same obligation to write insurance for its out-of-state insureds that it must write for insureds in New Jersey, New Jersey insureds' interests were advanced as well as other policy goals.  The statute was also expressly "intended 'to reduce the demands on the Unsatisfied Claim and Judgment Fund [(UCJF)].'"  Ibid.  (quoting Craig & Pomeroy, § 1:2-6).  The statute was intended to help "lower premiums, reduce litigation[,] and make PIP benefits available to all."  Id. at 561.

The Legislature's choice to exercise caution with respect to the assets of the UCJF is also advanced here and lends support in this challenge to the current version of the deemer statute.  The legislative choice to be more protective of the UCJF from claims caused by out-of-state insured tortfeasors

27

who may have no access to BI insurance coverage than from a claim caused by a New Jersey tortfeasor having only a basic policy is not an irrational policy choice. The allowance of a basic-policy choice for New Jersey residents does not undermine the rationality of the deemer statute. In New Jersey, there is still a presumption for the standard policy and its limits of coverage. The Legislature has reinforced that presumption through the deemer statute, which promotes the availability of insurance coverage for accidents that occur in New Jersey, helps reduce litigation, and alleviates the upward pressure on premiums in New Jersey.

## C.

Finally, we are compelled to note that any argument that relies on a claimed disparity for the out-of-state insured -- for whom the Legislature has made the choice to retain the presumptive standard policy BI coverage limits -- is misplaced in this appeal.

First of all, there is no insured to advance such a claim. GEICO cannot advance the claim of an insured as if it were its own.[2]

---

[2] The perspective of the insured is not only an improper viewpoint for the insurer to adopt as its argument in this equal protection analysis, we are constrained to note, moreover, that an out-of-state insured, unhappy with the deemer statute's impact on his or her rates with an insurer subject to New Jersey's statute, has other viable courses of action. Such an individual can choose to purchase insurance from an out-of-state insurer that does not write in New Jersey in order to avoid the deemer statute's application.

28

The lack of an insured as a party is problematic also because a proper record has not been presented. We do not know from this record what an insured is told in another jurisdiction about his or her coverage choices. We do not know whether the potential for the deemer statute's triggering has any impact on out-of-state insurance policy ratings. Not knowing whether there would be any differential, we cannot assume or speculate on whether any effect would be impactful or even discernible from an insured's perspective. In short, there is critical information missing from this record. We cannot operate on assumptions and speculation about the impact that the deemer statute has on an out-of-state insured.

That said, in the past, the legislative decision to treat in-state and out-of-state insureds differently in terms of the scope of their choice of coverage has not been deemed irrational. See Whitaker, 147 N.J. at 357-58. In Whitaker, this Court rejected an equal protection challenge by an insured because in-state insureds are afforded a verbal threshold/tort option choice but the deemer statute imposed a verbal threshold on out-of-state policies. Ibid. ("Because [out-of-state] carriers could be compelled to offer their non-resident insureds the benefits of New Jersey's minimum liability, uninsured motorist, and personal injury protection benefit coverages, the Legislature determined that it could appropriately impose the verbal threshold on those insureds.").

29

We deal here only with an insurer's claim of an equal protection violation.  As to that, we find no violation of equal protection in the operation of the deemer statute as construed.

V.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICE ALBIN join in JUSTICE LaVECCHIA's opinion.  JUSTICE FERNANDEZ-VINA filed a dissent, in which JUSTICE SOLOMON joins.  JUSTICES PATTERSON and TIMPONE did not participate.

Guerline Felix,

Plaintiff,

v.

Brian V. Richards,

Defendant.

---

Brian V. Richards and Kassandria Richards,
his wife per quod,

Plaintiffs,

v.

Guerline Felix, Mid-Atlantic
Insurance Company of New Jersey,

Defendants,

and

AAA Mid-Atlantic Insurance Company,

Third-Party Plaintiff-Respondent,

v.

GEICO Indemnity Company,

Third-Party Defendant-Appellant.

---

JUSTICE FERNANDEZ-VINA, dissenting.

---

1

I would reverse the Appellate Division's judgment. Under the deemer statute, an insurer's out-of-state policies must include coverage to satisfy at least the liability insurance requirements of N.J.S.A. 39:6B-1(a) or N.J.S.A. 39:6A-3. Because both statutes can be satisfied by policies that carry no BI coverage, GEICO fulfilled its duty. I respectfully dissent from the majority's finding that GEICO did not satisfy its duty because requiring GEICO to reform its policy would constitute a violation of the Equal Protection Clause of the Fourteenth Amendment. New Jersey insureds are not required to have BI coverage themselves, and requiring out-of-state insurers to provide more coverage when their insureds enter the state distinguishes unconstitutionally between in-state and out-of-state drivers.

The deemer statute, N.J.S.A. 17:28-1.4, "requires insurers authorized to transact automobile insurance business in New Jersey to provide coverage to out-of-state residents consistent with New Jersey law 'whenever the automobile or motor vehicle insured under the policy is used or operated in this State.'" Zabilowicz v. Kelsey, 200 N.J. 507, 513 (2009) (quoting N.J.S.A. 17:28-1.4). The statute was enacted in 1985 as part of the State's "no fault automobile insurance plan" and "in response to a growing number of cases where New Jersey residents were injured in accidents caused by out-of-state drivers whose insurance coverage was less than New Jersey's statutory

2

requirements." Leggette v. Gov't Emps. Ins. Co., 450 N.J. Super. 261, 265 (App. Div. 2017) (quoting Gov't Emps. Ins. Co. v. Allstate Ins. Co., 358 N.J. Super. 555, 560 (App. Div. 2003)).

When enacted in 1985, the deemer statute required insurers to include Personal Injury Protection (PIP) and other New Jersey coverages in their out-of-state drivers' policies. Allstate Ins. Co., 358 N.J. Super. at 560. The Legislature aimed to minimize the number of New Jersey residents injured in automobile accidents by out-of-state drivers with BI coverage less than the New Jersey state requirements. Ibid. The Legislature additionally intended "to reduce the demands on the Unsatisfied Claim and Judgment Fund [(UCJF)]." Ibid. (quoting Craig & Pomeroy, N.J. Auto Insurance Law, § 1:2-6 (2003)). Out-of-state policies subject to the statute that do not contain express provisions in compliance with the New Jersey statute are "deemed" to comply. Ibid. As a result, "the law acquired the name by which it is commonly known, the deemer statute." Ibid. The deemer statute was additionally intended "to lower premiums, [and] reduce litigation" while seeking the proper recourse for New Jersey residents when injured by out-of-state drivers. Id. at 561.

I conclude GEICO satisfied its duty under the deemer statute, and mandating it to reform its Florida policy violates the Equal Protection Clause of the federal constitution. I disagree with the majority's view that to satisfy

3

its duty under the deemer statute, GEICO must include in its Florida policy the BI coverage outlined in N.J.S.A. 39:6B-1(a), or if it fails to do so, the policy will be deemed to have BI coverage of $15,000/$30,000. This view ignores that N.J.S.A. 39:6B-1 has been amended since the deemer statute was enacted, and thus has created two alternate tracks by which a New Jersey driver can satisfy the requirements of N.J.S.A. 39:6B-1(a), even if her policy carries zero BI coverage.

The basic policy referenced in N.J.S.A. 39:6B-1(b) explicitly offers insureds the option of purchasing personal liability coverage for $10,000. Nonetheless, the basic policy does not "provide for or mandate personal liability insurance like its 'standard policy' counterpart." Citizens United Reciprocal Exch. v. Perez, 223 N.J. 143, 153 (2015). Therefore, a New Jersey driver can satisfy N.J.S.A. 39:6B-1(a), a statute that "appears" to require all New Jersey drivers to carry BI coverage of $15,000/$30,000, by purchasing a basic policy that may carry zero BI coverage. At most, the basic policy can have BI coverage of $10,000 per accident.

Furthermore, like the basic policy, the special policy referenced in N.J.S.A. 39:6B-1(c) has no BI coverage. As such, a New Jersey driver can also satisfy the minimum requirements of N.J.S.A. 39:6B-1(a), a statute that also "appears" to require all New Jersey drivers to carry BI coverage of

4

$15,000/$30,000, by purchasing a special policy that necessarily has no BI coverage. In sum, when read together, N.J.S.A. 39:6B-1(a), (b), and (c) establish that New Jersey drivers can satisfy the minimum requirements and avoid sanctions for noncompliance under N.J.S.A. 39:6B-2 by purchasing a standard, basic, or special automobile insurance policy that has no BI coverage.

An out-of-state insurance provider satisfies its duty under the deemer statute if its policy's coverage satisfies at least the liability insurance requirements of N.J.S.A. 39:6B-1(a) or N.J.S.A. 39:6A-3. Although GEICO satisfied its duty pursuant to N.J.S.A. 39:6B-1(a), it also satisfied its duty under N.J.S.A. 39:6A-3. More specifically, the language of the statute's first sentence, "[e]xcept as provided by [N.J.S.A. 39:6A-3.1]," amounts to an exception within N.J.S.A. 39:6A-3 for the policy defined by N.J.S.A. 39:6A-3.1: the basic policy.

The Legislature's intent in amending N.J.S.A. 39:6A-3 is clear: a New Jersey driver can lawfully purchase a basic policy that has no BI coverage. As a result, an insurer can satisfy the minimum requirements of N.J.S.A. 39:6A-3 in its out-of-state policy, even if the policy carries no BI coverage. This leads to the same conclusion drawn above: GEICO's Florida policy should not be deemed to have BI coverage of $15,000/$30,000.

5

Given the specific facts of this case and the creation of the basic and special policies, New Jersey drivers can no longer reasonably expect the other drivers with whom they share the road to necessarily have BI coverage. In other words, whenever a New Jersey resident is driving, he or she is at risk of involvement in an accident with another New Jersey driver whose policy carries no BI coverage. According to the Legislature, this is an acceptable risk because policies with no BI coverage are more "affordable for individuals with limited income" and "encourage drivers to seek coverage" who otherwise might not. See Citizens United, 223 N.J. at 153, 156. If the deemer statute were interpreted to require insurers to include BI coverage of $15,000/$30,000 in their out-of-state policies, New Jersey drivers would be in a better position if injured by an out-of-state driver with the out-of-state equivalent of a basic or special policy than they would be if they were injured by a New Jersey driver who had an actual basic or special policy.

Because GEICO satisfied its duty pursuant to the deemer statute, it is not necessary to reach the constitutional question at issue. However, even though the majority deemed GEICO's Florida policy to carry $15,000/$30,000 BI coverage, mandating GEICO to reform its out-of-state policy violates the Equal Protection Clause, as it requires out-of-state insurance companies who do business in New Jersey or are affiliated with those who do business in New

6

Jersey to provide higher coverage limits for its out-of-state insureds than is required for in-state drivers. This is not to suggest that the deemer statute itself is unconstitutional, but that it is unconstitutional as applied to GEICO in this circumstance.

"The Fourteenth Amendment of the United States Constitution prohibits a State from denying 'any person within its jurisdiction the equal protection of the laws,'" which is "'essentially a direction that all persons similarly situated should be treated alike.'" Dyszel v. Marks, 6 F.3d 116, 124-25 (3d Cir. 1993) (quoting Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1984)). Because the deemer statute does not infringe on fundamental rights and is not "drawn upon inherently suspect distinctions such as race, religion, or alienage," it is evaluated under rational basis review. Maceluch v. Wysong, 680 F.2d 1062, 1065 (5th Cir. 1982) (quoting New Orleans v. Dukes, 427 U.S. 297, 303 (1976)); accord Dyszel, 6 F.3d at 125. "If a statutory distinction has some reasonable basis, 'a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'" Whitaker v. DeVilla, 147 N.J. 341, 358 (1997) (quoting Dandridge v. Williams, 397 U.S. 471, 485 (1970)).

The basic automobile policy was introduced by the Legislature with the intent to provide affordable insurance to those who would otherwise not pursue

7

coverage. However, the scheme that New Jersey implements does not further the Legislature's intent. When enacting basic and special automobile insurance policies, the Legislature was likely not interested in whether out-of-state drivers had access to the same type of affordable insurance product as New Jersey drivers. The Legislature, therefore, could have sought to design a scheme in which most drivers on New Jersey roads carry BI coverage because they either own a standard policy, own a basic policy with optional BI coverage, or own an out-of-state policy that, regardless of its terms, is deemed to have BI coverage of $15,000/$30,000. The only drivers without at least some amount of BI coverage would be the minority of drivers who own either a basic policy with no BI coverage, or a special policy. This scheme would maximize New Jersey consumers' access to affordable insurance while also minimizing the pressure on the UCJF's financial resources.

Although this Court recognizes that an automobile insurance scheme that properly compensates accident victims by liable tortfeasors is desirable, such a scheme cannot expect or require out-of-state drivers to carry higher BI coverage limits than those New Jersey drivers are required to carry. In such a circumstance, and in this case, New Jersey drivers are wrongfully advantaged, given the option to purchase no BI coverage while out-of-state drivers are deemed to provide $15,000/$30,000, regardless of insurer or policy type. This

8

wrongfully infringes upon the rights of out-of-state insurance carriers and citizens, as well as out-of-state insurers' ability to do business in New Jersey.

The argument that this provides a benefit to the out-of-state driver by providing additional BI coverage does not consider that the coverage is likely provided at the cost of an increase in premium. Specifically, Florida's Motor Vehicle No-Fault Law was enacted in 1971 to "provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits." Fla. Stat. § 627.731. Through its enactment, the Florida Legislature intended to require motor vehicle insurers who issue policies in Florida to provide PIP benefits for bodily injury "arising out of the ownership, maintenance, or use of a motor vehicle." Fla. Stat. § 627.736(1). Therefore, Florida insureds driving through New Jersey inevitably carry BI coverage in their policies, something New Jersey drivers are not required to do.

In the event a Florida insured is involved in an accident with a New Jersey driver in New Jersey, under the current New Jersey legislative scheme, the Florida driver is required to carry more BI coverage than the New Jersey driver and is more likely to be liable for damages as a result. Such disparity in coverage frustrates the legislative intent of our sister state and may affect Florida insurers' willingness to do business in New Jersey in the future. The

9

same holds true for all other states whose insurance policies carry some level of mandated BI coverage.

Because GEICO satisfied its duty pursuant to the deemer statute, as well as both N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1, GEICO should not be required to reform its Florida policy to include $15,000/$30,000 BI coverage. Even if GEICO failed to satisfy its statutory duty, requiring it to reform its Florida policy would violate the Equal Protection Clause and would be unconstitutional.

For the foregoing reasons, I respectfully dissent.